## CIRCUIT COURT OF LEE COUNTY

Peggy Ruth Fannon Myers

    v.

Donald Wayne Myers

Donald Wayne Myers

    v.

Peggy Ruth Fannon Myers

January 2, 1985

By JUDGE S. W. COLEMAN, III

The parties in this divorce proceeding have each filed their respective bill of complaint and cross-bill seeking a dissolution of their marriage of ten years. The parties were married on July 6, 1974, and separated April 15, 1982. Each party alleges that the other wilfully deserted and abandoned the other. The defendant Donald Wayne Myers had been previously married and has a son, David Wayne Myers, who was legally adopted by his second wife, Peggy Ruth Fannon Myers. The previous marriage of Donald Wayne Myers ended when his wife died in childbirth with the son, David Wayne Myers. Both parties are seeking custody of the child who is eleven years of age. The parties request equitable distribution of marital

property and an award of spousal and child support, attorney's fees and court costs.

Peggy Ruth Fannon Myers is the extension agent for Lee County and has been gainfully employed for a number of years prior to her marriage. Donald Wayne Myers is a farmer and owner of an interest in a cemetery which he manages. Mr. Myers suffers from a physical disability resulting from injuries received in an accident. He indicates that over the years he has attempted to supplement his income by trading and doing custom farm work and grading. Both his farming operation and interest in the cemetery were conveyed to him from his parents.

As to the grounds for divorce, shortly after the marriage the parties moved into a residence in close proximity to the husband's parents. Since the death of Mr. Myers's former wife, his parents had provided the primary care for the infant child David Wayne Myers and had also provided many of the needs of Donald Wayne Myers. It is apparent that the situation and relationship between the two families was a matter of great concern to Peggy Ruth Fannon Myers although the record does not suggest that there was any open disharmony. She apparently felt that she was not able to develop the relationship with her adopted child that she desired and that the daily association by Donald Wayne Myers with his parents was not conducive to their development of a strong marital relationship. It appears that the parties never openly and directly confronted the situation but Peggy Ruth Fannon Myers did on several occasions unsuccessfully attempt to suggest to her husband that they relocate in the county not immediately adjacent to his parents. In the latter part of 1981 Donald Wayne Myers became seriously ill and had to be hospitalized for an extended period of time. Mrs. Myers suggested that during his period of recovery that they rent an apartment closer to her place of employment where she could be available to check on and care for him after his release from the hospital. Such was done and both parties resided in the apartment during Mr. Myers recuperation. Although it is not explicit in the record, it appears that Mrs. Myers held out the hope that such living arrangement would be satisfactory and that the parties would continue to reside there. Nevertheless, after Mr. Myers reached a satisfactory point of recovery he indicated that he desired to return to their former residence and the farm which

he owned and other residence nearby. Mrs. Myers refused to return and remained in the apartment. Although the record is not explicit, it does appear that her remaining in the apartment appeared to be an effort on her behalf to compel her husband to make some other living arrangement apart from his family which she perceived as an impediment to a healthy marital relationship. For a period of time both parties remained firm in their resolve. Eventually, after seeing that her efforts were unsuccessful, Peggy Ruth Fannon Myers decided to resume the marital relationship and expressed her intention to move back to their former marital residence with her husband and adopted child. Donald Wayne Myers refused to permit her to do so. His acts and actions of his parents made it abundantly clear that she would not be permitted to return. "No trespass" signs were erected and she was forbidden to return.

It is unnecessary for the court to decide whether Peggy Ruth Fannon Myers was justified in her complaints about the living arrangements and relationship with her husband's parents. Likewise, it is unnecessary to decide whether Donald Wayne Myers acted properly or improperly in either remaining in the situation or refusing to make other living arrangements. It is sufficient to say that the situation was a problem in the marriage which they were not able to resolve but which would have given neither legal justification under the circumstances to have deserted or abandoned the marital relationship. Although Donald Wayne Myers did move from the apartment last occupied by the parties and return to his former residence, I do not deem such to be wilful desertion and abandonment because it seems implicit from the circumstances that the parties contemplated such would only be a temporary arrangement. While Mrs. Myers may have hoped that such would become permanent and offer a solution to her problems, such did not develop. While the continued persistence of Peggy Ruth Fannon Myers to refuse to return to their former marital residence may have shown an intention on her part to permanently abandon the marital relationship, such did not occur. It would appear that her remaining in the apartment for a period of time was a further effort on her part to prevail upon her husband to make other living arrangements. However, when it became apparent that he had no intention of doing so, Peggy Ruth Fannon Myers relented and attempted to resume her marriage and

return to her husband, adopted child and former marital residence. Upon doing so Donald Wayne Myers and his family prevented her return. "No trespass" signs were erected and when she attempted to enter the property or home she was confronted by her husband or in-laws and prohibited from returning. Such conduct by Donald Wayne Myers was not legally justified since he did not have good cause to deny his wife's return to the marital relationship. Accordingly, it is the conclusion of the court that the refusal of Donald Wayne Myers to permit Peggy Ruth Fannon Myers to return to their marital home constituted constructive desertion and abandonment by Donald Wayne Myers pursuant to the provisions of § 20-91(6) of the Code. Such desertion has continued for a period of one year and entitles Peggy Ruth Fannon Myers to a decree of divorce from the bond of matrimony.

### Child Custody

The contest for custody of the child is between the biological father and adoptive mother. Neither consanguinity nor adoption are or should be controlling factors; however, such can be considered along with all other surrounding circumstances to determine what is in the present and future best interest and welfare of the child. The court has considered a myriad of circumstances in the case at bar but will mention only those salient facts which has led to the conclusion reached. It is the opinion of the court that both parents and homes would provide a suitable atmosphere for the rearing of David Wayne Myers. The mother's educational and employment background are positive factors which the court has considered. She possesses many personal traits and qualities that are positive factors in parenting. Peggy Ruth Fannon Myers is an industrious, well-organized, well-groomed and highly motivated individual who seems very stable and secure with her own image. She appears to be truly devoted to the welfare and future of her adoptive son but has been frustrated over the years that her husband's parents prevented her from establishing the mother-child relationship which she desired. Throughout the evidence she commented upon her inability to establish a meaningful relationship with the child because the paternal grandparents had since the child's early years provided for his needs and been parent figures for the young boy.

Since the separation of the parties in April of 1982, the son has been with his father and paternal grandparents with only occasional visitations with his adoptive mother. While the father does not possess the same personal traits and qualities of the adoptive mother, he is devoted to the welfare of his son. He places great value on the family unit and support, both emotional and financial, that they provide one another. Both the father and paternal grandparents spend meaningful time with the child and are always available to provide for the child's needs. The adoptive mother is employed full-time and is required to travel with some regularity away from the home. While the father is not gainfully employed, he is involved in a farming operation and management of a cemetery that provides sufficient income to meet his son's material needs. Under the circumstances in which the child has been reared over the years and considering the knowledge which the child has that his biological mother died during childbirth, it does appear that the tie of consanguinity is a significant factor to be considered. While it is perhaps impossible to project whether or what emotional scars might be left by separating the child from his biological father and paternal grandparents, the risk of such would appear great. There is nothing in the record to suggest that either home would not provide the child the financial, emotional, spiritual and educational needs that are desirable. In conclusion, the court is of the opinion that custody of David Wayne Myers is and should be awarded to Donald Wayne Myers with liberal visitation rights granted unto Peggy Ruth Fannon Myers. Such liberal visitation rights shall include visitations every other week-end from 6:00 P.M. on Friday through 6:00 P.M. on Sunday and one month during the summer school vacation together with reasonable visitations on Thanksgiving, Christmas, Easter, family birthdays and such other holidays that the respective families recognize and celebrate.

### Equitable Distribution

Section 20-107.3 of the Code which became effective July 1, 1982, does control this litigation which was filed on July 19, 1982. While there are various properties and issues that will be considered, the primary problem which the court will initially address involves the home in which the parties resided which underwent

considerable improvement and renovation from funds contributed by both parties but primarily from funds of Peggy Ruth Fannon Myers. It appears that the husband, Donald Wayne Myers, contends that the home is separate property within the definition of Section 20-107.3(A)(1)(i) in that it was acquired by him prior to the marriage. Additionally he would argue that any increase in value of the separate property during the marriage remains separate property even though the increase was occasioned by monetary contributions from the wife. Donald Wayne Myers relies upon the specific language in the statute in support of his position. On the other hand, Peggy Ruth Fannon Myers contends that the home is marital property because it does not fall within the foregoing definition of separate property in that during the marriage it was not "maintained" as separate property and further that the definition of all other property "acquired" by each during the marriage as contained in Section 20-107.3(A)(2)(ii) should be given such a dynamic interpretation to include any property which has, in fact, been transformed or transmuted into marital property maintained and used for the benefit of the family unit. Since Virginia's equitable distribution statute is new and has not been interpreted, this court has looked to other jurisdictions for guidance. The three approaches which various jurisdictions have taken are discussed in the case of *Hall v. Hall*, 462 A.2d 1179 (Me. 1983). While there is language in Virginia's Code § 20-107.3 which might suggest that Virginia would follow the common law or "inception of title" rule, I am of the opinion that the "transmutation" or "source of funds" rules provide the better reasoned and less harsh results. I commend counsel to the discussion in the *Hall* case for consideration of this novel issue. However, it is the conclusion of the court that the home and improvements do constitute marital property and will be subject to such distribution based on those factors outlined in § 20-107.3(E) of the Code.

The house and certain savings acquired during the marriage through the efforts of Peggy Myers consisting of certain certificates of deposits and general savings will be dealt with separately. Insofar as the house is concerned, the appraisal report shows the value to be $47,892.00, of which sum $8,000.00 was attributable to value of the land. Peggy Myers testified that she paid $18,905.96 from her own funds acquired both during and

before the marriage to the improvements and that Wayne Myers spent approximately $6,000.00 for improvements. The court is of the opinion that Peggy Myers would not be entitled to recoup the entire value of her expenditures but should receive as her distribution of this asset the equitable portion which her contribution enhanced the value of the property. This conclusion is reached taking into consideration both the monetary and non-monetary contributions which the parties made to the care and maintenance of such property, the duration of the marriage, the circumstances and factors which contributed to the dissolution of the marriage and other circumstances surrounding the respective roles which each party assumed during the marriage. It appears that the respective parties' contributions to the improvements were approximately $18,000.00 by Peggy Myers and $6,000.00 by Donald Wayne Myers; thus, their proportionate contributions to the improvements and enhancement were seventy-five per cent and twenty-five per cent respectively. Based upon the appraisal submitted by A.C. Leedy the total improvements taking into account the depreciation enhanced the value of the property approximately $13,000.00. Accordingly, Peggy Myers is entitled to be reimbursed seventy-five per cent of the $13,000.00 enhanced value of the property which will be retained by Donald Wayne Myers. Therefore, she shall receive as a lump sum monetary award for distribution of this asset the sum of $9,750.00.

There were certain certificates of deposits and general savings in the name of Peggy Myers in the amount of $3,000.00 at the time portions of the evidence were submitted to the court. Additionally, she received $2,450.00 as tax refunds for 1982-83. While these were assets obtained during the marriage, it appears that they were exclusively and entirely based upon earnings by Peggy Myers during the time in which she made substantial monetary and nonmonetary contributions to the marriage and the court is of the opinion that she should retain those assets without any portion being distributed to the other spouse.

During the marriage the parties acquired a number of cattle. The evidence is in irreconcilable conflict as to the ownership of the cattle and the number of cattle that were owned by the parties as marital property at the time of dissolution of the marriage. The wife contends that she spent $3,000.00 of her own money for the purchase

of the cattle; however, the husband contends that during his illness she sold "two loads of cattle" that he did not know what disposition was made of the proceeds. He indicated that the cattle were owned fifty per cent by himself and fifty per cent by his father, that twelve or thirteen of the cattle had died, some had been sold and at the time of his evidence he retained only nine head of cattle which were all over ten years old except for one with a total value of $2,000.00. From the evidence, the court is unable to determine whether there were any cattle which constituted marital property at the time of dissolution of the marriage and accordingly the court is unable to undertake any distribution of this contested asset.

Both parties in their evidence indicate that the household furnishings have been basically equitably divided between the parties and each appears willing to accept that which he has as his proportionate distribution of the assets, except for a one track snowmobile which Wayne Myers conceded that Peggy Myers could receive as her property. Accordingly, such shall be awarded and distributed to Peggy Myers.

Additionally, the parties purchased a mobile home which was placed in the name of Peggy Myers that was acquired at a value of approximately $14,800.00 according to the evidence. Of the $14,800.00 value, Peggy Myers contributed $2,507.16. The major portion of the purchase price was financed and later paid from the proceeds of the sale of property which Wayne Myers acquired from his father. The value of the asset at the time of the dissolution appears to be approximately $10,000.00. In view of the fact that this asset was acquired by independent funds obtained by Donald Myers from his father and by cash assets held by Peggy Myers, I am of the opinion that the distribution should be based upon such contributions rather than on other considerations. Peggy Myers's contribution to the purchase price was approximately sixteen per cent, entitling her to $1,600.00 of the current value if Wayne Myers is to retain this asset which is currently titled to Peggy Myers. Therefore, provided that Peggy Myers does transfer title to this asset to Donald Wayne Myers, which appears to be that which is contemplated by the parties, she shall receive a monetary award of $1,600.00 for her interest in this marital asset.

There were several motor vehicles consisting of a 1978 Chevrolet car, a 1967 Ford vehicle and a 1976 Ford truck and a 1981 truck acquired by Wayne Myers after the separation of the parties. While there was evidence offered in regard to these items, it appears that the parties have mutually and satisfactorily distributed these assets and the court does not undertake to do so. The only other remaining assets which this court can determine to have existed at the time of the separation and of any significant value are a camper worth $500.00 and a horse trailer valued at less than $500.00. The evidence suggests that these assets have depreciated substantially and have a nominal or minimal value for which Peggy Myers shall receive $100.00 as her distributive share of such asset. While Peggy Myers did request and make demand for a certain saddle, the evidence suggested that such item had been stolen or was no longer available to the court for distribution and the court does not make an award pertaining thereto.

### Spousal Support

Based upon the foregoing rulings, Donald Wayne Myers is not entitled to consideration for permanent maintenance and support pursuant to the provisions of Section 20-107.1 of the Code since it was determined that grounds for divorce under the provisions of Section 20-91(6) existed in behalf of Peggy Myers. Insofar as an award of spousal support for Peggy Myers is concerned, after consideration of those factors set forth in § 20-107.1 of the Code, while she is not precluded from consideration for spousal support now or at some time in the future depending upon any change in circumstances, the court is of the opinion at the current time based upon the educational training and ability of the parties, their current earning capacity, the age, physical and mental condition of both parties that no spousal support should be awarded to Peggy Myers at this time. Such issue shall remain open for any consideration based upon such future change of circumstances that may occur. Additionally, having taken into consideration essentially the same factors as outlined above, I do not feel it appropriate to require Peggy Myers to contribute to the support and maintenance of her adopted son while he is residing with

Donald Wayne Myers other than the support which she will afford him during the periods of visitation.

### Court Costs and Attorney's Fees

Both parties shall bear the obligations of their own attorney's fees since the respective estates and earnings of the parties are sufficient to do so. The costs of this proceeding shall be taxed against Donald Wayne Myers.