**Ossie BEAL**

v.

**Inez BEAL.**

Supreme Judicial Court of Maine.

June 23, 1978.

---

Clayton N. Howard (orally), Thomas F. Shortill, Damariscotta, for plaintiff.

Joseph T. Walsh, Jr. (orally), Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODREY, Justice.

In December, 1971, appellee Inez Beal was divorced from appellant Ossie Beal and was awarded alimony. In June, 1976, appellee brought a motion seeking to recover arrearages of alimony. Appellant defended on the ground that the alimony statute of Maine, as it stood in 1976, was unconstitutional under the Maine and federal constitutions because it denied males equal protection of the law. The Superior Court found for Inez, and Ossie appeals.

Appellant asserts that the Maine alimony statute then in effect discriminated against the class of divorced men by subjecting them to claims of alimony while not subjecting divorced women to similar claims.[1] In 1976, section 721 of title 19 of the Revised Statutes provided in terms for pay-

---

[1]. The legislature has replaced the statute since this appeal was heard to make either spouse eligible for alimony. P.L.1977, ch. 564, § 86, effective July 23, 1977.

ment of alimony to divorced women. No other provision of Maine family relations law authorized imposition of alimony for the benefit of divorced men. The statutory scheme apparently discriminated against divorced men as a class.

■ We must determine whether the discrimination denied appellant's class the equal protection of the laws within the meaning of the fourteenth amendment to the United States Constitution or section 6-A of article I of the Maine Constitution. We conclude that the discrimination had no rational relationship to any legitimate state objective and therefore denied appellant equal protection of the laws. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Portland Pipe Line Corp. v. Environmental Improvement Comm'n,* Me., 307 A.2d 1 (1973), *appeal dismissed,* 414 U.S. 1035, 94 S.Ct. 532, 38 L.Ed.2d 326. We need not decide whether sex is a suspect classification or whether a male can invoke any suspect nature of the classification to gain the benefits of strict scrutiny of the discrimination. *See Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). The classification in this case does not pass the rational basis test.

The alimony statute challenged in this case was derived from the statutes of 1821, chapter 71, section 5. The early statutes provided for alimony for support of the wife if the divorce was granted because of the fault of the husband. *Chase v. Chase,* 55 Me. 21 (1867). At one time, a purpose of this alimony scheme may have been to protect a right of the innocent wife to support by her former husband. *See Bubar v. Plant,* 141 Me. 407, 44 A.2d 732 (1945). However, in *Strater v. Strater,* 159 Me. 508, 196 A.2d 94 (1963), this court recognized that the purpose of the alimony statute was

to continue financial relations of the parties so that the wife could maintain her station in life. This court said:

> "The granting of alimony is within the sound discretion of the court determined by many factors, including the husband's ability to pay, the wife's station in life and her financial worth and income." 159 Me. at 517, 196 A.2d at 99.

Section 1 of chapter 399 of the Public Laws of 1971 eliminated the fault provision from the alimony statute, thereby leaving as the sole purpose of the statute the provision of financial support to the former wife when necessary.

■ The arrangement making former wives eligible for support but not former husbands in similar circumstances did not bear a rational relationship to legitimate state interests. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Government interest in administrative convenience does not justify arbitrary legislative choices between the sexes. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Furthermore sex discrimination can no longer be justified by outdated sexual stereotypes concerning the respective roles of men and women. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). As Chief Justice Dufresne observed in his concurring opinion in *Pendexter v. Pendexter,* Me., 363 A.2d 743, 747 (1976), the years have brought great changes in economic relations among men and women. Those changes have received recognition by the United States Congress and the Maine Legislature in their approval of the proposed Equal Rights Amendment and in statutes prohibiting many forms of sex discrimination.[2] Though it may be a fact that more women than men require

---

2. The 92d Congress proposed the Equal Rights Amendment in its second session, on March 22, 1972. H.R.J.Res.208, 92d Cong., 1st Sess. (1971); S.J.Res.8, 92d Cong., 1st Sess. (1971). Congress has enacted many measures dealing with problems of sex discrimination. *E. g.,* 15 U.S.C. § 1691 (equal credit opportunity) (Supp. V 1976); 20 U.S.C. § 1866 (Women's Educational Equity Act of 1974) (Supp. V 1976); 29 U.S.C. § 206(d) (equal pay) (1970); 42 U.S.C.

§ 2000c (public education) (Supp. V 1976); 42 U.S.C. ch. 21, subch. 6 (equal employment opportunity) (1970).

The Equal Rights Amendment was ratified by the Maine Legislature in 1974. 2 Laws of Maine 1975, 2324. The Maine Human Rights Act, 5 M.R.S.A. ch. 337 (Supp.1973) and subsequent amendments (Supp.1977–78) prohibit sex discrimination in many respects.

alimony after divorce, courts are quite capable of determining needs on a case-by-case basis. Administrative convenience does not justify the perpetuation of sex discrimination.

Nor do we believe that the discrimination in this case can be justified under the rationale of *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). In that case the Supreme Court upheld a tax exemption that favored widows but not widowers. The court followed the tradition of according great deference to the tax classification. Furthermore, the direct burden of the discriminatory exemption did not fall on any particular class whereas under the former Maine alimony statute the burden fell directly on the class of divorced men. We conclude that the sex-based distinction apparent in the alimony statute as it stood in 1976 was not justified by legitimate state interests.

■ We must therefore decide what relief should be given in the present case. As Mr. Justice Harlan pointed out in his concurring opinion in *Welsh v. United States,* 398 U.S. 333, 361, 90 S.Ct. 1792, 1807, 26 L.Ed.2d 308 (1970):

"Where a statute is defective because of under-inclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion."

In choosing between invalidation of a discriminatory statute or treating it as inclusive of an impermissibly excluded class, the court must ascertain and effectuate the predominant legislative purpose behind the statute. *See Dorchy v. Kansas,* 264 U.S. 286, 289–90, 44 S.Ct. 323, 68 L.Ed. 686 (1924). In several important cases the benefits of the statute have been extended to the improperly excluded class. *E. g., Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In *White v. Crook,* 251 F.Supp. 401 (M.D.Ala.1966), the court, though holding unconstitutional a state statute excluding women from jury duty, did not strike down the statute but entered an order extending to women the right and duty of serving, subject only to a temporary stay to permit the legislature to take detailed corrective action consistent with the court's opinion.

Broadening of the scope of the former alimony statute would result in a burden on some members of the class of divorced women who might be required to pay alimony. If the issue were whether to extend burdens under a discriminatory penal statute, obvious negative factors would come into play. *See Yu Cong Eng v. Trinidad,* 271 U.S. 500, 518–23, 46 S.Ct. 619, 70 L.Ed. 1059 (1926). However, in civil cases comparable to the controversy before us, the courts have extended the burdens on private parties in the process of extending the benefits originally available to an unconstitutionally restricted class. In *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), the court did not have any problem in extending both the benefits and burdens of a Louisiana wrongful death statute which in terms permitted recovery for the benefit of legitimate children of the deceased. The Court held that illegitimate children must be permitted to recover under the statute. In *Harrigfeld v. District Court,* 95 Idaho 540, 511 P.2d 822 (1973), the Idaho Supreme Court carefully considered the problem of extending the scope of an improperly discriminatory statute where the burden would fall on private parties. Finding that the predominant legislative purpose would be served by extending the benefits to the class of improperly excluded persons, the court extended both the benefits and the burdens of the statute. Thus, in cases of this sort, where an extension of the burden of a statute must be taken into account, we must still evaluate the dominant legislative intent and the importance of the statute and then determine whether in the light of that evaluation the benefits of the statute should be extended to the unincluded class or the statue treated as wholly invalid.

■ The Maine alimony statute has been in effect in some form for more than one hundred and fifty years, and it has never expressly excluded awards of alimony to divorced men. It merely did not authorize such awards before July 23, 1977. There are innumerable outstanding decrees awarding alimony, and those decrees are relied upon by the beneficiaries. Furthermore, those decrees serve the overriding legislative purpose, which is clearly to provide alimony in order to help preserve the economic status quo that existed during marriage. By its repeal and replacement of the alimony statute in 1977 the legislature has made it clear that as between abolishing alimony and making it available to husbands in appropriate cases, it would choose the latter. We conclude that the dominant legislative purpose of the alimony statute, as it stood when this action was brought, is correctly served by treating it as extending eligibility to men as well as women. This result is supported by well-reasoned commentary on this subject. Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L.J. 871, 912–20 (1971).

The entry is:

Appeal denied.

Judgment affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.