**Sharon L. SHIRLEY**

v.

**Edward D. SHIRLEY.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1983.
Decided Oct. 12, 1984.

Logan, Kurr, Hamilton & Robinson, Harold C. Hamilton (orally), George W. Kurr, Bangor, for plaintiff.

Stern & Goldsmith, J. Hilary Billings (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Plaintiff, Sharon L. Shirley, on January 31, 1983, was granted a divorce from the Defendant, Edward D. Shirley, by the Superior Court (Hancock County) and was awarded custody of their two minor children. She appeals from those portions of the divorce judgment granting visitation rights to the Defendant and establishing his child support obligations. Further she contends that the Superior Court erred in its valuation and division of marital property, pursuant to 19 M.R.S.A. § 722–A (1981). Because we find no abuse of discretion by the Superior Court in the judgment of divorce with respect to any of these issues, we deny the appeal.

The parties were married in Orrington on August 2, 1968 and lived together, first in Old Town and then in Bucksport, for approximately thirteen years. Two children were born of the marriage, one son in 1975 and another son in 1979. Relations between the parties gradually deteriorated, and in July of 1981 the Plaintiff moved out of the family's home in Bucksport. Taking both children with her, she returned to California to live near her parents. She and the children have resided there ever since.

The Plaintiff filed a complaint for divorce in the District Court (Ellsworth) on August 3, 1981, alleging cruel and abusive treatment and breakdown of the marriage due to irreconcilable differences. The case was subsequently removed to Superior Court pursuant to M.D.C.Civ.R. 73(b), and on January 31, 1983, after hearing, the presiding justice entered a divorce judgment for the Plaintiff for the cause of irreconcilable differences. See 19 M.R.S.A. § 691(1)(H) (1981). Although the court awarded full legal custody to the Plaintiff, the Defendant was granted the right to visit the children in California "for an entire day at a time and in a place of his choosing" as well as the right to have them come to his home in Maine for two weeks each summer, all travel expenses to be paid for by the Defendant. The court ordered the Defendant to make weekly support payments equal to $20 per child and to pay the Plaintiff $14,600 in exchange for her one-half share of the equity in the marital real estate. The divorce judgment also divided all items of jointly held personal property. Neither party requested findings of fact and conclusions of law. Neither party challenged the trial court's decisions concerning custody or the grounds for divorce.

We note at the outset that issues concerning the incidents of divorce, such as property division, alimony, custody and child support, are addressed to the sound discretion of the divorce court. *Gardner v. Perry*, 405 A.2d 721, 725 (Me.1979). The

judgment of the divorce court based on a careful evaluation of the evidence presented is entitled, therefore, to very substantial deference. *Cooley v. St. Andre's Child Placing Agency,* 415 A.2d 1084, 1086 (Me. 1980). On issues of such a delicate nature, it is particularly inappropriate for this Court to undertake an independent evaluation of the evidence based on a cold record. *Id.* at 1086. Accordingly, as long as there is rational or credible support in the record for the divorce court's decision on these matters, the judgment will not be overturned on appeal. *Sheldon v. Sheldon,* 423 A.2d 943, 946 (Me.1980).

The Plaintiff first contends that the presiding justice erred in granting the Defendant the right to visit the children without any supervision and in failing to specify his reasons therefore.[1] Her objection to the allowance of unsupervised visitation is based on evidence in the record concerning the Defendant's alleged drinking problem, his occasional acts of violence toward the children in the past and his "lack of a meaningful relationship" with them. The record contains conflicting testimony on all of these points.

In approving a particular scheme for visitation, as in determining which parent shall retain custody, the divorce court must consider a wide variety of factors affecting the best interests of the children involved, including each parent's capacity to give the child love, affection, and guidance. *See Costigan v. Costigan,* 418 A.2d 1144, 1146 (Me.1980). Although this Defendant has never taken primary responsibility for care of his children, there is no evidence before us that he is incapable of doing so. The Plaintiff herself testified that she was confident that the Defendant would not drink when visiting the children in California, and the presiding justice may well have concluded that the Defendant

would likewise refrain from drinking during the children's visits in Maine. A single violent act against the younger child does not suggest a consistent pattern of behavior that would place the children in jeopardy while visiting the Defendant. Other factors to be considered include the cost of traveling to California, the practical difficulties involved in arranging supervised visitation in Maine and the children's interest in maintaining contact with their father. We find that the judgment awarding visitation rights reflects a rational balancing of the above factors and is adequately supported by the record.

The Plaintiff argues that the divorce court's award of $20 per child per week in support payments is inadequate given the relative income levels and expenses of both parties. At the time of the divorce hearing, the Defendant was employed as a service manager for an automotive service concern in Bangor and received approximately $936 per month after taxes and medical insurance deductions. He testified that his expenses, including various loan payments, taxes, utilities, food and insurance premiums, totaled almost $900 per month. The Plaintiff, on the other hand, pays herself a salary of $500 per month (before taxes) out of a computerized bad check information business which grosses approximately $1,500 monthly. Although at the time of the hearing, she and the children were living rent-free in a mobile home owned by her parents, the Plaintiff expected to move as soon as the divorce was decreed. She estimated that new housing would cost between $400 and $500 each month. She contends that the divorce court erred in not requiring the Defendant to share equally this additional cost of providing housing for the children.

Once again we observe that in determining the appropriate amount of

---

[1] The latter point lacks any merit since the mere omission of factual findings or reasons is not fatal to a divorce decree and does not, by itself, *constitute* an abuse of discretion by the divorce court. In the absence of a motion by one of the parties pursuant to M.R.Civ.P. 52(a) for specific findings of fact and conclusions of law, the presiding justice is under no obligation to volunteer them. *Cyr v. Cyr,* 432 A.2d 793, 797 n. 2 (Me.1981).

child support to be contributed by the father, the divorce court must consider many variables including the relative incomes, assets, earning capacities, ages, health and future prospects of both parents as well as the financial needs of the children. *Pendexter v. Pendexter*, 363 A.2d 743, 750 (Me.1976). In assessing the Plaintiff's earning capacity, the court was entitled to consider the likelihood that her income would increase substantially, given the projected growth of her business. On the facts presented, the divorce court may well have concluded that the Plaintiff ultimately would not be forced to leave her family's home for more expensive lodgings. The mere fact that the divorce court might have ordered the Defendant to pay more for child support on the evidence presented does not mean that the failure to do so constitutes reversible error. We cannot say that the award "results in a plain and unmistakable injustice." *Smith v. Smith*, 419 A.2d 1035, 1038 (Me.1980).[2]

■ The presiding justice divided all of the jointly held personal property by reference to two separate lists of items which the Plaintiff introduced. In effect, the judgment allocates to the Plaintiff all of the items which she had taken with her to California, while awarding the Defendant title to all that was left behind. The Plaintiff claims that this division is patently inequitable and constitutes an abuse of discretion. Although we do not condone the divorce court's method of dividing the personal property in the instant case, the Plaintiff's failure to provide estimates of value for any of the items listed precludes this Court from determining on appeal

whether the division was truly inequitable. In the absence of such evidence, we uphold the divorce court's decision.

At hearing, both parties submitted estimates of the current value of the marital real estate in Bucksport. The Plaintiff's expert appraised the fair market value of the property at between $49,000 and $51,500 as of July, 1981. The Defendant's expert assigned it a value of only $34,000 in September, 1982. The presiding justice relied on the lower estimate submitted by the Defendant. After subtracting all the outstanding debt obligations on the property, the court divided the $29,200 equity portion in half and ordered the Defendant to pay the Plaintiff $14,600 for her share.

■ Neither party contests the divorce court's finding that the Bucksport real estate is marital property and should be divided equally.[3] Rather the Plaintiff contends that the court erred in accepting the Defendant's appraisal figure of $34,000, particularly in light of the evidence that the parties had invested $30,000 to build the house and $1,000 to acquire the land. In disposing of marital property pursuant to 19 M.R.S.A. § 722–A, the presiding justice, as the trier of fact, must arrive at a value based upon an assessment of the reliability of the expert opinions admitted into evidence. Although we have suggested that a mere averaging of two appraisals may not be acceptable, any estimate that is within the range of expert opinion is valid provided the presiding justice reached his own conclusion through an independent review of the evidence. *Crooker v. Crooker*,

---

**2.** If it were in fact an oversight for the divorce court not to include in its decree a provision that the Defendant continue to pay the children's medical insurance premiums, this oversight could be easily corrected upon motion by either party pursuant to M.R.Civ.P. 60(b). *See Bagley v. Bagley*, 415 A.2d 1080, 1082–83 (Me. 1980).

**3.** The parties acquired the land in August of 1978 after they had been married for ten years, thus giving rise to the presumption that it was marital property. *See* 19 M.R.S.A. § 722–A(3)

(1981); *Zillert v. Zillert*, 395 A.2d 1152, 1155 (Me.1978) (in the absence of evidence to support a finding that any of the exceptions under section 722–A(2) apply, the presumption must be given full effect). The record indicates that both parties were employed during the course of the marriage and contributed more or less equally to the financial support of the family. Proceeds from the sale of their previous residence helped to finance construction of the Bucksport house that is the subject of this dispute.

432 A.2d 1293, 1296 (Me.1981). The amount invested in a particular piece of real estate does not necessarily determine its fair market value. Nevertheless, given certain market conditions, it is entirely possible that those two figures will coincide. As long as the record contains sufficient evidentiary support for the divorce court's finding, "it is not to be altered or overturned merely because an alternate finding would also have support in the evidence." *Giguere v. Giguere*, 450 A.2d 1264 (Me. 1982). We find that the presiding justice's decision to rely on the more recent appraisal (which happened to be the lower figure) in this case was based on his own independent assessment and is adequately supported by the fact that the house—a one and one half story, three bedroom log cabin style building—remains twenty percent unfinished.

Accordingly, the entry must be:

Judgment affirmed.

All concurring.