William SKELTON

v.

Dorothy SKELTON.

Supreme Judicial Court of Maine.

Argued Jan. 11, 1985.

Decided April 12, 1985.

William C. Leonard (orally), George M. Carlton, Jr., Bath, for plaintiff.

Joseph Field (orally), Brunswick, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

This is an appeal by William Skelton from an award of alimony to his former wife, Dorothy, following their second divorce from each other. He contends that, in fashioning the award, the District Court erred by taking into account the full eighteen-year span of their relationship, including the nine years of the first marriage and the succeeding six years during which they lived together before marrying again. Although her circumstances during that time may indeed be relevant to the need for alimony, in this case the District Court erred in using the award to "compensate" Dorothy for her "long service as spouse and homemaker." Thus, we vacate and remand for a re-examination of the evidence and determination of the alimony award consistent with this opinion.

The parties were first married in 1966. Having been divorced before, William insisted that Dorothy sign an antenuptial agreement waiving all claims to alimony or his property in case that marriage ended in divorce. Three children were born to them during the nine years that the marriage lasted. They were divorced in 1975, having been separated for one week. Then, in the words of the District Court, "approximately three weeks after the divorce was final, just prior to the due date of the first child support payment and the court date of an

assault charge arising between the parties, [William] convinced [Dorothy] to return with the children to the marital home." They lived together unmarried for the next six years, during which time William bought a parcel of land on which he built the family home. The parties remarried in 1981, but within two and one half years William commenced this action for a second divorce.

■ Finding that there were irreconcilable marital differences, the District Court granted the divorce. It awarded custody of the children to Dorothy and ordered William to pay weekly child support. The court correctly determined that the two parcels of land William owned, one acquired before the first marriage and one during the interim period of cohabitation, were not "marital property" within the meaning of 19 M.R.S.A. § 722-A. *Grishman v. Grishman*, 407 A.2d 9, 12 (Me. 1979). It also held correctly, and William agrees, that the agreement signed by the parties before the first marriage was irrelevant to the consideration of alimony following the second divorce in 1984, there being no suggestion of the parties' intent that it apply to any possible subsequent marriage. *Seuss v. Schukat*, 358 Ill. 27, 192 N.E. 668, 672–73, 95 A.L.R. 1461 (1934).

■ As to Dorothy's need for alimony, the court properly considered her health and earning potential. It briefly considered the family's economic circumstances, concluding that the family home was the most important factor in maintaining the status quo. The court also stated,

[t]he first marriage lasted nine years, the second three, with a six year period of cohabitation between marriages. All things considered it has the same effect as an eighteen year marriage.... The only way [Dorothy] can be compensated for her many years as mother and homemaker is by the award of alimony.

Making its purpose quite clear, the court later repeated that alimony "will compensate [Dorothy] in the only practical way, under the circumstances, for her long service as spouse and homemaker."

■ In formulating the award, the court observed that William's "record for protecting his real estate, his evasiveness as to income, and his failure to file income tax returns for a period of five years ... would indicate that any order as to periodic payments of alimony might be difficult to enforce." For those reasons, well within the scope of its discretion to consider, the court decided that a specific sum in lieu of alimony would be most appropriate. Surveying William's estate, consisting of the two parcels of land, valued by William at $53,000 and $43,000 respectively, the court determined that an award of $43,000, or in the alternative, the conveyance of the second parcel (on which sits the family home) would meet the requirements 19 M.R.S.A. § 721 sets on the *amount* and *method* of payment of alimony, that is, that the payment "1) be reasonable and 2) have regard for the spouse's ability to pay." *Bryant v. Bryant*, 411 A.2d 391, 393–94 (Me.1980).[1]

---

1. 19 M.R.S.A. § 721 (1981) provides,
   The court may decree to either spouse reasonable alimony out of the estate of the other spouse, having regard to that spouse's ability to pay and may order that spouse to pay sufficient money for the defense or prosecution of hearings regarding alimony. To effect the purposes of this section, the court may order so much of one spouse's real estate, or the rents or profits thereof, as is necessary to be assigned or set out [to] the other spouse for life. The court may order instead of alimony, a specific sum to be paid or to be payable in such manner and at such time as the court may direct. The court may at any time alter, amend or suspend a decree for alimony or specific sum when it appears that justice requires it; except that a court may not increase the alimony if the original decree prohibits an increase. The court may use all necessary legal processes to carry its decrees into effect.
   This section shall not limit the court, by full or partial agreement of the parties or otherwise, from awarding alimony for a limited period, from awarding alimony which may not be increased regardless of subsequent events or conditions, or otherwise limiting or conditioning the alimony award in any manner on terms that the court deems just.

Were we called upon only to answer the question whether this award, in form or amount, was so unjust as to constitute an abuse of the court's broad discretion, we would not hesitate to affirm. In awarding alimony, the court is not limited to the payor's income but may order payments from the payor's separate estate. *Smith v. Smith*, 419 A.2d 1035, 1039 (Me. 1980). Assessment of the need and circumstances of the parties appearing before it is a matter peculiarly within the trial court's province. "There is no universal standard which a judge may apply in determining the amount of alimony in any given case." *Strater v. Strater*, 159 Me. 508, 518, 196 A.2d 94, 99 (1963). The determination whether the award is reasonable and within the payor spouse's ability to pay is within the trial court's discretion. *Shirley v. Shirley*, 482 A.2d 845, 847 (1984); *Bryant v. Bryant*, 411 A.2d at 393–394. We will not find an abuse of that discretion unless the magnitude of the award is "plainly and unmistakably an injustice ... 'so apparent as to be instantly visible without argument.'" *Prue v. Prue*, 420 A.2d 257, 259 (1980); *Bryant v. Bryant*, 411 A.2d at 395. Where, as here, we have no transcript of the testimony, our review is even more limited. We will assume that the District Court's finding that the award is within the husband's means was supported by the evidence. *Baker v. Baker*, 444 A.2d 982, 984 (1982).

But the principal question before us concerns not the scope of this award, but its express purpose. Is alimony properly awarded to compensate a divorcing spouse for her "years of service" in the past, or does it look to the future, acting as a substitute for the loss of support enjoyed during the preceding years, awarded in as large an amount and for as long a term as circumstances make necessary? The answer is clearly the latter.

A review of our decisions shows that while some of the factors relevant to the award have changed, the essential purpose of alimony has remained the "maintenance and support" of the payee spouse. *Bubar v. Plant*, 141 Me. 407, 409, 44 A.2d 732, 733 (1945); *Torrey v. Torrey*, 415 A.2d 1092, 1094 (Me.1980). In earlier times alimony was provided only when the divorce was due to the fault of the husband. *Chase v. Chase*, 55 Me. 21 (1867). But P.L.1971, ch. 399, § 1 "eliminated the fault provision from the alimony statute, thereby leaving as the sole purpose of the statue the provision of financial support to the former wife when necessary." *Beal v. Beal*, 388 A.2d 72, 74 (Me.1978);[2] *Mitchell v. Mitchell*, 418 A.2d 1140, 1143 (Me.1980). The traditional award sought to continue the parties' financial relations to "maintain the wife in the station in life to which she belongs." *Strater v. Strater*, 159 Me. at 517, 196 A.2d at 99. Under that approach, the relevant considerations were principally "the resources and the social standing and pecuniary faculties and future prospects of the husband ... [and] the wife's estate and her necessities." *Id.* While those are all still relevant, the demise of the assumption that alimony is, in every case, for life or until remarriage has brought considerations of the payee's training, experience, and capacity for self-support into play as well. *See Prue v. Prue*, 420 A.2d at 259. This trend has not altered the essential purpose of the award. Alimony is intended to fill the needs of the future, not to compensate for the deeds of the past.

A situation analogous to the present one arose in *Baker v. Baker*, 444 A.2d 982 (Me.1982). The divorce court had initially granted a sum in lieu of alimony that, it said, "represented the wife's 'economic contribution to the marriage realized by her from savings and sale of personal property.'" *Id.* at 983. The court later

---

**2.** *Beal* held that 19 M.R.S.A. § 721 (1976), subjecting men but not women to alimony claims, unconstitutionally denied males the equal protection of the law. By the time that case was decided, the Legislature had replaced that statute, making either spouse eligible. P.L.1977, ch. 564 § 86.

clarified its judgment to substitute the authority of 19 M.R.S.A. § 722–A for that of section 721 in making the award. We observed that the clarification was appropriate, since "the extent of the wife's contribution to the marriage is relevant not to an award of alimony under 19 M.R.S.A. § 721 (1981), but to a disposition of property under 19 M.R.S.A. § 722–A (1981)." 444 A.2d at 984. The present case concerns less tangible contributions, but the principle is the same. It was therefore error for the District Court to award alimony to Dorothy Skelton in order to "compensate her for her long service."

■ This is not to say, however, that the effect of the fifteen years preceding the second marriage is irrelevant to the assessment of Dorothy's need for alimony. That assessment is an individual one in every case, "giving regard to the situation, both at present and for the foreseeable future, of both spouses." *Bryant v. Bryant*, 411 A.2d at 395. It is in the discretion of the trial court to determine whether the situation of one spouse requires an award of alimony from the other. To the extent that Dorothy's capacity to support herself is a relevant consideration, the court is not precluded from assessing the effect that spending those fifteen years in the role of spouse and homemaker had upon the opportunity for the development of Dorothy's marketable employment skills.

In *Prue v. Prue* we touched briefly on the wife's capacity to support herself. She was "partially disabled, ha[d] completed only the sixth grade, and ha[d] no employable skills. During their marriage her husband refused to let her work outside the home." 420 A.2d at 259. The fact that she had not worked during the marriage was relevant to her ability to support herself, and therefore to her need for alimony at the time of divorce. In a similar case, the Minnesota Supreme Court found it directly relevant to a divorcing wife's present condition and prospects that she,

has been out of the job market for nearly 30 years. Her efforts during those years were devoted to raising five children and maintaining the family home in such a way as to contribute to the establishment and furtherance of her husband's career and to the affluent circumstances in which the family lived at the time of the separation. Now, at 51 years of age, with certain health problems and without vocational skills or independent resources, it is unreasonable ... to expect petitioner to be financially successful enough in the labor market to support her needs, although she will doubtless wish to make reasonable efforts to do so. She is entitled to suitable support.

*Arundel v. Arundel*, 281 N.W.2d 663, 666 (Minn.1979). As the Georgia Supreme Court has held,

[c]ertainly a wife who has training and skills which could be used to command good earnings but which were not used ... will find years later that she has lost her formerly competitive position in the labor market.

If the wife devotes her energy and time to the home and family, thereby sacrificing her public earning potential, it seems the [fact finder] should be able to take these factors into consideration in awarding alimony to her.

*Moon v. Moon*, 237 Ga. 635, 229 S.E.2d 440, 442 (1976) (dissent filed on another point). Thus, though the District Court may not use 19 M.R.S.A. § 721 to "compensate" Dorothy Skelton for eighteen years of marriage, it may consider the ramifications of her occupation during those years, just as it may consider the more traditional factors in making its award.

■ The foregoing provides the basis for our view that the District Court may correctly take the entire eighteen-year span of the relationship into account for the proper purpose, despite the earlier marriage, after which no alimony was awarded, and the intervening period between mar-

riages. Because alimony is a substitute for future support, not compensation for past contributions, it is clear that "palimony" is not in issue here. There has been a valid marriage and there is now a divorce, the prerequisites for an award of alimony under 19 M.R.S.A. § 721. Having properly invoked that section, the payee is entitled to have all factors relevant to her status and prospects considered. It is unquestioned that the court may consider any education and training that she may have had before she even met her husband. There is no reason to eliminate from consideration her circumstances in the six-year period between marriages if they are relevant to the court's assessment. For the same reason, the circumstances of the first marriage may also be considered on the issue of alimony. Because there is no question of "earning" alimony for that specific period of time, and because the antenuptial agreement only precluded an award following the first divorce, Dorothy's absence from the job market during that time is also not exempt from consideration. The District Court judge has the discretion to take into account any factors that he deems relevant to Dorothy's current and future need for post-marital support.

Since the judge erroneously awarded alimony to Dorothy Skelton to "compensate her" for what he found to be, in effect, an eighteen year marriage, we vacate the alimony award and remand for his re-examination of the evidence and determination of the alimony award in light of this opinion.

The entry is:

Judgment vacated as to the award of alimony.

Remanded to the Superior Court with instructions to remand to the District Court for proceedings consistent with this opinion.

In all other respects, judgment affirmed.

All concurring.