**Pamela Darling CUSHMAN**

v.

**Thomas Spaulding CUSHMAN.**

Supreme Judicial Court of Maine.

Argued June 3, 1985.

Decided July 11, 1985.

Drummond, Woodsum, Plimpton & MacMahon, P.A., John A. Graustein (orally), Portland, for plaintiff.

Mittel & Hefferan, Michael P. Asen (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

NICHOLS, Justice.

On this appeal we confront once again the problems facing the judge in an action for divorce when the parties have failed to present complete evidence as to their assets, yet look to the judge somehow to fashion from the fragmentary information given him a division of marital property that is both just and complete.

Here the Plaintiff, Pamela Darling Cushman, appeals from a judgment of divorce entered by the Superior Court (Cumberland County), not the granting of the divorce

from the Defendant, Thomas Spaulding Cushman, but upon what she contends was an error in the division of property and upon the failure of the divorce court to award alimony. We deny her appeal.

The marriage on August 6, 1976, was a second one for both parties. Although no children were born of this marriage, each has children by their respective prior marriages. At the time of this marriage the husband was employed as a teacher at Thornton Academy in Saco, but the wife was not working full-time.

At about the time of their marriage, the parties purchased a home in Cape Elizabeth as joint tenants. In 1978 they sold this home and used the proceeds to purchase another home in Yarmouth, which they have also held as joint tenants.

In 1977 the parties started a business known as "Pamela Cushman Antiques." Although the parties operated this business so long as they lived together, the extent to which each participated in its operation is unclear. The wife testified that she ran nearly the entire operation. While conceding that the wife did most of the buying, the husband asserted that he put in substantial time transporting antiques, going to shows with his wife, and selling the antiques. Although the parties seem to characterize all of these items as business antiques, they used many of them in their home. When he moved out of the marital home in January, 1984, the husband took many antiques with him. Since that time the wife has operated the business on a limited basis.

In 1979 the husband had left his job at Thornton Academy and had become a family counselor. At around this same time the wife also became a family counselor. In addition to their antique business the parties operated a counseling practice out of their home. After their separation the wife continued to operate her practice out of the Yarmouth home, while the husband practiced out of his Portland apartment and out of a rented Yarmouth office. Prior to their separation, the counseling practice had been set up so that the wife was the husband's employee. Social security payments were not made for the wife but were made for the husband.

In addition to the Yarmouth house, the parties at the time of the trial owned a camp in Greenville Junction, Maine, which they purchased after their marriage, financing this purchase through a loan from the husband's parents. This camp also has been in their names as joint tenants. The parties stipulated that the net value of the Yarmouth house after payment of the mortgage was $79,800, and that the net value of the Greenville camp after payment of that mortgage was approximately $10,-000.

When the husband left the marital home in January, 1984, he took the Ford van, which had been used in the antique business, and, without informing his wife, loaded it several times with numerous items of personal property, including antiques, furniture, business records, files, boats, and camping gear. The husband took these items to his parents' home in Waldoboro. At the time of trial the husband had some of these items in Waldoboro and some at his Portland apartment. While the husband kept the van, the wife kept the Peugeot station wagon; however, when she found that it was costing her too much to operate, she traded it in on a Jeep Cherokee.

At various times during their marriage, the parties had in their possession antiques and money which they had acquired from the Defendant's father. The testimony as to whether certain items were gifts to both parties, gifts to the husband, loans to the couple, or items to be kept in storage for the husband's father was confusing. The wife asserted essentially that all were gifts to both her and her husband. The Superior Court ultimately found that a certain antique "highboy" belonged to the Defendant's father. The court apparently concluded that all other items received from the husband's father became marital property.

When the parties married the wife owned a furnished home in Castine, a new Peugeot automobile, and approximately $2,000 in cash. After the marriage, she sold her Castine home, netting therefrom approximately $30,205. She also sold most of the furniture from the Castine home. She testified that she netted between $3,000 and $4,000 from this sale of furniture and that she subsequently invested these proceeds in the antique business.

Shortly before the marriage the husband had about $7,400 in a bank account and approximately $4,800 in a retirement account. The parties disputed the precise amount the husband still had at the time of the marriage, and neither offered conclusive proof of those balances.

At the time of trial, there were many antiques which were part of the inventory of the antique business. The court ordered that an appraisal be conducted by a Skowhegan appraiser, but, notwithstanding the order, this man was never given an opportunity to appraise all of them.

The wife alleged her husband did not bring forth some of the antiques in his possession for the appraisal. On her part, the wife did not permit the appraiser to see some of the items in her possession. At trial the parties sharply disagreed as to the value of many items, including some that had been evaluated by this independent appraiser, and submitted unsworn exhibits showing their respective opinions as to the values. The parties also disagreed as to which party had certain items in his or her possession.

On November 19, 1984, the divorce court granted Plaintiff a divorce from the Defendant on the grounds of irreconcilable differences, ordered division of marital property but declined to award alimony. The wife seasonably filed a motion for findings of fact and conclusions of law pursuant to M.R.Civ.P. 52(a); she also filed a motion to alter or amend the judgment and a motion for a new trial. On January 9, 1985, the divorce court filed findings of fact and conclusions of law, and subse-

quently denied the wife's other motions. The Plaintiff wife now brings this appeal.

In the judgment dated November 19, 1984, the divorce court ordered in part:

That the Yarmouth house and the Greenville Junction camp be sold, and the proceeds divided, after the respective mortgages and certain marital debts of the Defendant are paid.

That the parties keep the antiques and personal property currently in their possession.

That the IRA accounts and other bank accounts be set aside to the party in whose name the account was.

That the Jeep Cherokee be set apart to the Plaintiff and the Ford van to the Defendant.

That neither party shall be responsible for alimony.

Thus, by not setting aside any property as a party's nonmarital property, the presiding justice implicitly ruled that all of the parties' property was marital property. This finding was later reflected in the court's findings of fact and conclusions of law, basing such conclusion upon findings that each party had made contributions but had failed to adduce testimony that would enable a court to trace them, and upon findings that contributions were not made with the intent of being nonmarital, separate contributions.

On her appeal to this Court, the wife contends that the property division was erroneous. She first argues that, before dividing the marital property, the divorce court should have set aside some $50,000 of assets which she claims were traceable to property that she owned before her marriage to the Defendant.

Our statute, 19 M.R.S.A. § 722–A (1981), which is modeled after a uniform act, not only sets forth the method by which marital property is to be divided, but also defines what property is to be considered marital. Heretofore, we have indicated that application of section 722–A involves a

three-step analysis. Specifically, the divorce court must:

> (1) determine what of the parties' properties is marital and what is nonmarital, including the contribution each may have made to the acquisition of the marital property, and recognizing the contribution of a spouse as a homemaker;
>
> (2) set apart to each that spouse's nonmarital property; and
>
> (3) divide the marital property between them in such proportion as the court deems just.

*Grishman v. Grishman*, 407 A.2d 9, 11 (Me.1979).

■ Section 722–A(2) provides a presumption that property is marital. That presumption, however, can be overcome by a number of methods, including a showing that the property (or part of it) was acquired in exchange for property acquired prior to marriage. 19 M.R.S.A. § 722–A(2)(B). The party claiming that a particular asset acquired during the marriage is nonmarital property bears the burden of overcoming the statutory presumption. *Moulton v. Moulton*, 485 A.2d 976, 978 (Me.1984); "The showing required to overcome the presumption is one of fact; thus the decision of the divorce court whether the burden was successfully carried is reviewable only for clear error." *Id.*

■ In the case at bar the record discloses substantial support for the divorce court's conclusion that the wife had not overcome that statutory presumption. Other than by summaries prepared by her, the wife failed to adduce evidence that the proceeds of the sale of the Castine home went into two separate bank accounts or that the proceeds were eventually invested in the antique business and used for repairs and improvements of the couple's Cape Elizabeth and Yarmouth homes. The wife alleged that the husband had the bank records relevant to these transactions, yet there is no indication that she tried to obtain these documents.

Similarly, the wife failed to document the sales price for her furniture and to trace any of the proceeds into the antique business.

■ A divorce court is never obliged to accept as proved one party's undocumented and conclusory statements. *Cf. Moulton*, 485 A.2d at 978. Accordingly, the court here did not err in giving effect to the statutory presumption and in concluding that all of this property was marital.

The wife further challenges the Superior Court's division of the marital assets. Specifically, she contends that the Superior Court did not in fact make what it deemed to be an equal division in value by awarding each party the personal property in his or her possession. She further asserts that in consideration of her contributions to the marriage, the division is not just.

■ A divorce court's decision regarding the disposition of marital property is reviewable only for abuse of discretion. *Axtell v. Axtell*, 482 A.2d 1261, 1263 (Me. 1984); *Stevens v. Stevens*, 448 A.2d 1366, 1371 (Me.1982). To the extent that it provides a clear directive, however, section 722–A limits the court's discretion. *Axtell*, 482 A.2d at 1263. The statute orders a division of "marital property in such proportions as the court deems just after considering all relevant factors." These factors include each spouse's contribution to the acquisition of marital property, the value of the property set apart to each, and the parties' economic circumstances at the time the division is to become effective. *Id.* In order to obtain a just result, the court may consider as well all matters peculiar to the individual case. *Fournier v. Fournier*, 376 A.2d 100, 103 (Me.1977).

■ An examination of the order challenged on this appeal, as well as the findings of fact and conclusions of law, clearly indicates that in this case the divorce court purported to make an equal division of marital property. The court did not state the reasons that justified this equal division. On these facts, however, appellate review does not demonstrate an equal divi-

sion to be other than a just one. Although the wife brought more assets to the marriage than did the husband, the husband was the couple's sole source of income for the first year of the marriage, and contributed a significant portion of the income thereafter. In light of these circumstances, the decision to make an equal division was not an abuse of discretion by the divorce court.[1]

Whether the division was in fact equal is another issue. The wife squarely condemns the divorce court's finding that "the marital property in the possession of the Plaintiff and Defendant is substantially equal and therefore each party should keep that property." The wife further argues that the divorce court erred in failing to make specific findings as to the value, identity, and location of items of personal property. Although the unsworn lists of items and values submitted to the court by the parties were markedly disparate, the divorce court did not indicate on whose appraisal reliance was placed.

In a case such as this it may be impracticable and nearly impossible for the divorce court to make a specific finding as to the value and location of each chattel with which the court is dealing. Here that problem is exacerbated by the parties' disagreement as to both values and locations, their disputes with some of the values assigned by the independent appraiser, and their failure in many instances to offer evidence of value apart from their own respective estimates. While we deplore the divorce court's failure to state upon which appraisal or appraisals the court was relying, *cf. Shirley v. Shirley*, 482 A.2d 845, 849 (Me.1984), nevertheless the court was certainly entitled to rely upon the evidence the court found most credible.

Moreover, upon the court's issuance of its findings of facts and conclusions of law,

pursuant to M.R.Civ.P. 52(b), the Plaintiff could have easily requested further findings, specifically addressing the estimated values upon which the court was relying. This she failed to do. Therefore, we cannot now say that the court's omission of more specific findings as to value constitutes reversible error.

Finally, the wife contends that the Superior Court erred in failing to award her periodic alimony or a lump sum. The divorce court is afforded considerable discretion in its decision as to alimony. *See, e.g., Skelton v. Skelton*, 490 A.2d 1204, 1207 (Me.1985); *Shirley*, 482 A.2d at 847. In the instant case, we find no abuse of this discretion. The wife left the marriage, which was of relatively short duration, with substantial assets. In addition, she had the ability to support herself as a counselor and an antique dealer. The ruling therefore was not inappropriate.

The entry is:

Judgment affirmed.

All concurring.

---

**1.** In *Shirley v. Shirley*, 482 A.2d 845, 849 (Me. 1984), we voiced our disapproval of the trial court's dividing the marital property according to who currently had possession. However, we found that because the Plaintiff had failed to

provide estimates of values, we could not determine whether the division was inequitable. In the instant case, in contrast, both parties supplied estimates, and an independent appraisal of many, but not all, antiques was performed.