Mary E. LEE

v.

Edward D. LEE.

Supreme Judicial Court of Maine.

Submitted on Briefs June 19, 1990.

Decided July 9, 1991.

John F. Barnicle, Moncure & Barnicle, Brunswick, for plaintiff.

Susan R. Kominsky, Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

WATHEN, Justice.

Mary E. Lee ("wife"), appeals the judgment of the Superior Court (Piscataquis County, *Browne, J.*), affirming the judgment of the District Court (Dover–Foxcroft, *Calkins, J.*) granting her a divorce from Edward D. Lee ("husband"). Wife argues that the District Court erred in its division and valuation of property, in awarding alimony of one dollar per year, in ordering wife to pay her own attorney fees, and in fixing the nature and extent of husband's contact with the couple's daughter. Finding no error, we affirm.

The parties, who were married in 1976, have one daughter, born in 1986. Five years before the marriage, wife's father set up a revocable trust comprised primarily of Massachusetts real estate to benefit wife and her three siblings. From this trust, the couple jointly received three parcels of land during their marriage. The couple invested the $250,000 proceeds from the sale of this land in some land and a house in Beaver Cove, Maine. They sold their Massachusetts house, which was largely built by husband's uncle, for $100,-000. Although husband and wife dispute the extent of the compensation, they agree that the uncle was paid for his services. The couple also jointly purchased land in Weld for $28,000.

Husband, who was unemployed at the time of the divorce hearing, had previously earned approximately $40,000 per year. He testified that he had few financial assets and several debts, including an $8,000 car loan, a $2,500 debt to his sister, and a $5,600 debt to his parents. At the time of the divorce hearing, he needed to borrow $75 per week to pay for child support. Wife, who has not worked since 1986, formerly earned between $12,000 and $20,000 per year.

Wife asked the court to award only supervised visitation rights to husband, based on his history of substance abuse and domestic violence. She testified, and husband confirmed, that he had been convicted twice for drunk driving, the most recent incident resulting in a serious automobile accident. She also described two instances in which husband had threatened her with bodily harm, once while wielding a vase and another time a fireplace poker, and three incidents in which husband asked her to shoot either him or herself, once when their daughter was present.

A licensed psychologist who had evaluated both wife and husband in connection with the custody dispute testified that husband's drinking problem needed to be addressed before the court should grant him either custody of or extended visitation with his daughter. In response to the psychologist's report, husband had begun to attend Alcoholics Anonymous prior to the divorce hearing, but continued to express ambivalence about the seriousness of his problem. Aside from his drinking problems, however, wife did not challenge husband's fitness as a parent and characterized him as a "participating father."

Wife filed a complaint for divorce, claiming that there were differences between the parties which were irreconcilable and that the marriage had broken down. Following a divorce hearing, the District Court found that the marital estate had been augmented by the parties' earnings, their real estate holdings, including the three parcels contributed by wife's family through the trust, and the building services contributed by husband's family. Based on this assessment, the court awarded wife $126,285 in marital property and the first $50,000 plus one-half of the proceeds over $50,000 from the sale of the house. It also set apart, as nonmarital, any interest wife might have in her father's trust. To husband the court awarded marital property valued at $124,-132, plus one-half of the proceeds over $50,-000 from the sale of the house, and ordered him to pay the marital debts. The court found "this roughly equal division to be an equitable division of marital property in light of the contribution of the parties'

families to the marital assets, the contributions of both parties to the estate and the present financial situation of the parties."

Based on a determination that the parties are "in roughly equal financial circumstances," the court declined to order husband to pay wife's attorney fees and determined that husband should pay weekly child support, but only $1.00 per year in alimony to wife. The court did not find that supervised contact between husband and daughter is necessary so long as husband remains "sober and refrain[s] from the use of intoxicating liquor during the periods of contact." Lengthy summer visitation was conditioned on husband's completion of an alcohol treatment program. Wife appealed the District Court's judgment to the Superior Court which, finding no abuse of discretion, affirmed the judgment. Wife appeals.

*Division and valuation of property*

In a divorce proceeding, the disposition of property is governed by 19 M.R.S.A. § 722–A (1981 & Supp.1990). Section 722–A(3) provides a presumption that all property acquired after marriage, regardless of how title is held, is marital. That presumption, however, can be overcome by a number of methods, including a showing that the property was acquired in exchange for property acquired by one of the spouses by gift. *See id.* §§ 2(A) & 3. The party claiming that certain property acquired during the marriage is nonmarital bears the burden of overcoming the statutory presumption. *See Cushman v. Cushman,* 495 A.2d 330, 334 (Me.1985). Because the showing required to overcome the presumption is one of fact, " 'the decision of the divorce court whether the burden was successfully carried is reviewable only for clear error.' " *Id.* (quoting *Moulton v. Moulton,* 485 A.2d 976, 978 (Me. 1984)). Wife contends that she satisfied her burden of showing that her interest in the trust established by her father was nonmarital and remained so throughout the conveyances that resulted in joint ownership of land in Maine at the time of the divorce hearing. The District Court, how-

ever, found that the transfer of land from the trust were gifts to husband and wife jointly and, thus, formed part of the marital estate.

In *Grant v. Grant*, 424 A.2d 139 (Me. 1981), we affirmed, by an evenly divided court, a divorce judgment classifying as marital property certain real estate acquired by a couple during marriage through devise to them as joint tenants. One of the divergent opinions in *Grant* concluded that the court had erred in not excluding the property from the marital estate because it had been devised by a third party to the couple *jointly* and not acquired by *"either* spouse" as specified in sections 722–A(2) & (3). *Id.* at 141–43. We adopt the contrary view that focuses on the intent of the statute to effectuate the concept of marriage as a partnership rather than on the technicalities of the statute's language. This intent is not furthered by excluding from marital property gifts acquired jointly, unless the transferor had a contrary intention. *Smith v. Smith,* 472 A.2d 943, 947 (Me.1984); *see also Grant v. Grant,* 424 A.2d at 144. Because the land from the trust was conveyed to the parties jointly and wife failed to establish that her father, the transferor, had a contrary intention when making the conveyances, the District Court did not err in finding that she failed to meet her burden of overcoming the presumption that the property is marital.

■ Moreover, there is no merit in wife's contention that the court failed to consider her contributions as a homemaker in making its findings on property division or erred in its disposition and evaluation of the marital residence. It has long been the rule that a divorce court's decision regarding the disposition of marital property is reviewable only for abuse of discretion. *See, e.g., Cushman v. Cushman,* 495 A.2d at 334. As a guide to the court, section 722–A orders a division of "marital property in such proportions as the court deems just" after considering such relevant factors as the contribution of each spouse to the acquisition of marital property, including the contribution of a homemaker;

the value of the property set apart to each; and the parties' economic circumstances at the time the division is to become effective, including the desirability of awarding the family home to the spouse having custody of any children. The court may also consider any matters peculiar to an individual case in order to obtain a just result. *See id.*

Here, the District Court determined the contributions of each spouse and their families before distributing the property. It found, based on the extensive amount of time wife had been spending in Massachusetts, that the marital residence in Maine should be sold, with the first $50,000 awarded to the wife and the remainder to be divided equally between the parties. The court awarded wife the right to possession of the home for 45 days from the date of the divorce judgment. Then, if the house had not been sold, the husband was awarded the right to take possession until the sale of the property. It based its evaluation of the property on the testimony of two real estate appraisers. On this record, we can find no abuse of discretion. The District Court clearly considered the contributions of each spouse to the acquisition of marital property, the value of the property set apart to each, including the revocable trust, the economic circumstances of each at the time of the division, and the desirability of awarding the family home for a limited period to wife, the spouse having custody of the daughter. *See* 19 M.R.S.A. 722–A(1). On appeal, wife has failed to demonstrate any failure to consider relevant factors in the court's distribution of property.

### *Alimony*

■ The purpose of alimony is to provide maintenance and support for the payee spouse. While traditionally an alimony award "sought to continue the parties' financial relations to 'maintain the wife in the station in life to which she belongs,'" current law requires the court to consider the "payee's training, experience, and capacity for self-support … as well." *Skelton v. Skelton,* 490 A.2d 1204, 1207 (Me.1985) (quoting *Strater v. Strater,*

159 Me. 508, 517, 196 A.2d 94, 99 (1963)). At the time of the divorce hearing, the statute governing the award of alimony provided, in pertinent part: "The court may decree to either spouse reasonable alimony out of the estate of the other spouse, having regard to that spouse's ability to pay...." 19 M.R.S.A. § 721 (1981). In determining alimony, the divorce court may consider a multitude of factors including the parties' income, earning capacity, and financial worth. *See Cole v. Cole,* 561 A.2d 1018, 1021 (Me.1989). "Assessment of the need and circumstances of the parties appearing before it is a matter peculiarly within the trial court's province." *Skelton v. Skelton,* 490 A.2d at 1207. We may not find an abuse of the District Court's discretion unless the injustice of the award is so plain and unmistakable that it "becomes instantly apparent upon review." *Sweeney v. Sweeney,* 556 A.2d 660, 661 (Me.1989).

■ In formulating an award of $1.00 annually, the District Court considered the earning capacities and present financial situation of both spouses, recognizing the past contributions of their families as well. By awarding token alimony, the court has reserved the right, at any time, to alter or amend the award of alimony when it appears that justice requires it. 19 M.R.S.A. § 721(5) (Supp.1990). The injustice wrought by the present decree, if there be any, is not so plain and unmistakable as to be instantly apparent upon review.

### Attorney fees

■ The District Court declined to order husband to pay wife's attorney fees because "the parties are in approximately the same financial situation and both equally capable of bearing the costs of litigation." While section 722 authorizes the paymᵉⁿt of reasonable attorney fees by the payor spouse, the court has wide discretion in making such an order. *See Bryant v. Bryant,* 411 A.2d 391, 395 (Me.1980). An award of attorney fees is generally "based on the parties' relative capacity to absorb the costs of litigation." *Smith v. Smith,*

419 A.2d 1035, 1040 (Me.1980). In light of the District Court's findings concerning the parties' roughly equal financial strength, the court acted within its discretion in declining to award wife her attorney fees. *See id.*

### Parental contact

■ Due to husband's history of alcohol abuse and "poor impulse control," wife argues that the District Court erred in awarding unrestricted and unconditional parental contact to husband. She also contends that the court erred in granting husband a six-week summer visitation with no intervening weekend visitation to wife. In response, husband points out his active involvement as a parent and the recent improvement in his behavior.

■ We have held that "any decision terminating or limiting the right of a parent to physical custody of his child affects his 'constitutionally protected liberty interest in maintaining his familial relationship with the child.'" *Jacobs v. Jacobs,* 507 A.2d 596, 598 (Me.1986) (quoting *Osier v. Osier,* 410 A.2d 1027, 1029 (Me.1980)). The right of a parent to the physical custody of the child, however, is not absolute. The paramount consideration for the court at the time of a divorce is the present and future welfare and well-being of the child. *See, e.g., Grover v. Grover,* 143 Me. 34, 37, 54 A.2d 637, 638 (1947). Thus, while husband has a constitutional right to the physical custody of his daughter, he may only exercise that right if the District Court finds that it furthers the best interest of the child. The court has broad discretion in determining what is in a child's best interests in a custody case, and its judgment, when properly exercised on the basis of the evidence presented, is entitled to very substantial deference. *Cooley v. St. Andre's Child Placing Agency,* 415 A.2d 1084, 1086 (Me.1980).

In applying the standard of the best interest of the child, the court was required to consider the factors enumerated in 19 M.R.S.A. § 752(5) (Supp.1990).[1] Here, the

---

**1.** Those factors include the daughter's age; her relationship with her parents; her preference, if

District Court found that both parents are caring and capable, that each has taken an active part in caring for the child, and that husband has persevered in maintaining contact with his daughter, even in somewhat difficult circumstances. The court took into account husband's alcohol problem by conditioning its award of unsupervised visitation on his remaining sober and refraining from the use of intoxicating liquor during periods of contact with the child. It granted him six consecutive weeks of summer contact only upon his completion of an alcohol treatment program. We find no abuse of discretion in this award of visitation to husband. The court acknowledged the best interest of the child as the paramount concern and structured a visitation award that permits father to maintain his familial relationship with his daughter under conditions providing adequate protections for the child.

The entry is:

Judgment affirmed.

All concurring.

she is old enough to express a meaningful preference; the duration and adequacy of her current living arrangements and the desirability of maintaining continuity; the stability of any proposed living arrangements; the parents' motivation and their capacities to give the child love, affection, and guidance; the child's adjustment to her present home, school, and community; the capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access, and to cooperate or learn to cooperate in child care; methods for assisting parental cooperation and each parent's willingness to use those methods; the effect on the child if one parent has sole authority over the child's upbringing; and all other factors having a reasonable bearing on the physical and psychological well-being of the child. See 19 M.R.S.A. § 752(5).