**Richard Dana HALL, Jr.**

v.

**Marcia Elizabeth HALL.**

Supreme Judicial Court of Maine.

Argued March 9, 1983.

Decided July 22, 1983.

John M. Callaway (orally), West Rockport, for plaintiff.

Lipman & Parks, P.A., David M. Lipman (orally), Sumner H. Lipman, Barbara L. Raimondi, Augusta, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER * and VIOLETTE, JJ.

GODFREY, Justice.

The plaintiff, Richard Dana Hall, appeals from a judgment of the Superior Court, Waldo County, divorcing him from his wife, Marcia Elizabeth and, among other things, disposing of two lots of land and a house in Liberty, Maine. The plaintiff had acquired the disputed property before marriage. He contends that the Superior Court erred in characterizing it as marital property and awarding it to his wife. We vacate the

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

portion of the judgment defining and distributing the Halls' marital property.

The Halls, who were married on August 8, 1977, had no children of the marriage. With two of Mrs. Hall's children from a prior marriage, they lived on the disputed Liberty property. The Halls added rooms and expanded existing rooms, doubling the original size of the house. The parties also installed a septic system.

At her husband's request, Mrs. Hall did not work outside the home. She did all the landscaping and gardening and handled the family finances. During the marriage, she contributed between $1,200 and $1,400 of retirement funds from a prior job, as well as the $25 weekly support she received for the two children. At trial, Mrs. Hall estimated the value of the disputed property at thirty to forty thousand dollars after the renovation.[1]

The divorce decree, entered on August 24, 1982, disposed of various items of marital and nonmarital property. The decree awarded the disputed house and land to Mrs. Hall on the basis of a finding that the disputed property had been converted from nonmarital to marital in character. Mrs. Hall asked for and received no alimony. The decree ordered Mr. Hall to pay Mrs. Hall money he owed as a result of outstanding court orders.

1. Mrs. Hall was the only witness. Mr. Hall did not attend the trial. Had he been present, he would have been forbidden from testifying on the issue of property division, as a sanction for his refusal to comply with Mrs. Hall's discovery requests. He does not contest that sanction on appeal.

2. 19 M.R.S.A. § 722–A provides, in pertinent part:

1. *Disposition.* In a proceeding: (a) for a divorce . . . the court shall *set apart to each* spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors . . . .

. . . .

2. *Definition.* For purposes of this section only, 'marital property' means all property acquired by either spouse subsequent to the marriage, except:

This appeal raises the question of the extent to which nonmarital property that is renovated and improved with marital funds becomes marital in character. Relying on 19 M.R.S.A. § 722–A (1981),[2] Mr. Hall contends that the disputed house and land in Liberty are separate, nonmarital property. He argues that the improvements, although made after the marriage, are nonmarital because they fit within the exception in section 722–A(2)(E) for "[t]he increase in value of property acquired prior to marriage." Mrs. Hall replies that the contribution of marital funds for the improvements "transmuted" the house and land entirely into marital property. We adopt neither position.

Courts have taken three approaches to the issue presented by this case. *See* Comment, *What's Yours Is Mine and What's Mine Is Mine: The Classification of the Home Upon Dissolution,* 28 U.C.L.A.L.Rev. 1365 (1981). The first is the "inception of title" rule, which fixes the status of property as either marital or separate as of the time title is first acquired, regardless of subsequent use of marital funds to pay for or improve it. Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis,* 61 N.C.L.Rev. 247, 253 (1983); Krauskopf, *Marital Property at Marriage Dissolution,* 43 Mo.L.Rev. 157, 180 (1978). In some inception-of-title states,

A. Property acquired by gift, bequest, devise or descent;

B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

. . . .

E. The increase in value of property acquired prior to the marriage.

3. *Acquired subsequent to marriage.* All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

the marital estate is entitled to reimbursement in the amount by which the use of marital assets enhanced the value of the property improved. *E.g., Honnas v. Honnas,* 133 Ariz. 39, 648 P.2d 1045 (1982); *Portillo v. Shappie,* 97 N.M. 59, 636 P.2d 878 (1981). In Missouri, with a property distribution statute similar to Maine's, it seems that the marital estate does not receive any reimbursement. *See Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976).

The second possible approach is the doctrine of "transmutation," which refers to a change in the character of the property from separate to marital "by an exercise of actual intention objectively manifested." *Young v. Young,* 329 A.2d 386, 389 (Me. 1974). This Court applied the doctrine in *Carter v. Carter,* 419 A.2d 1018 (Me.1980), where property acquired by the husband before the marriage was by him formally conveyed during marriage to him and his wife as joint tenants. The Law Court decided that the documentary transaction transmuted otherwise separate property to marital property because it raised an unrebutted presumption of an intent to do so. *Id.* at 1022. *Carter* is distinguishable from the instant case, in which there is no such documentary transaction. However, Mrs. Hall relies on Illinois decisions that employ the doctrine in a broader sense. *In re Marriage of Smith,* 86 Ill.2d 518, 56 Ill.Dec. 693, 427 N.E.2d 1239 (1981), held that contribution of marital funds to renovate nonmarital real property raises a rebuttable presumption that the entire property is marital. *Accord In re Marriage of Lee,* 87 Ill.2d 64, 58 Ill.Dec. 779, 430 N.E.2d 1030 (1981). The applicable language of the Illinois divorce statute is nearly identical to its Maine counterpart.

The third possible approach is the "source of funds" rule. Under this approach, property is deemed to have been acquired as it is paid for, so that it includes both marital and separate ownership interests. Krauskopf,

*supra,* at 180; Sharp, *supra,* at 255. The marital interest is ascertained by determining the ratio of marital and separate investment in the property. *Tibbetts,* 406 A.2d at 76. The Court of Appeals of Maryland recently adopted the source-of-funds approach for marital funds used to improve nonmarital real estate under a property distribution statute substantially similar to Maine's. *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982).

Mr. Hall's contention that the property is entirely separate is inconsistent with the partnership theory on which section 722–A is based.[3] As this Court explained in *Tibbetts:*

> The partnership theory ... requires that the marital estate be entitled to a proportionate share in the value of property where its equity interest was partially acquired by marital funds. Where the marital estate chooses to invest its funds in certain property together with nonmarital funds, the marital estate is entitled to a proportionate return on its investment.... The marital and non-marital estates have each made investments from which they are entitled to the full benefit and return.

406 A.2d at 77 (citations omitted). *Tibbetts* involved property acquired during marriage, in part in exchange for one spouse's nonmarital property. The Court rejected the argument that under the exchange provision of section 722–A(2)(B)[4] the entire property became nonmarital. Instead, it adopted the source-of-funds rule.

The partnership theory of *Tibbetts* is equally applicable here. The money spent during the Halls' marriage in expanding and renovating the Liberty house represents an investment of marital funds. If the marital property does not include the proportional increase in the value of improvements added with marital funds or

---

3. *See generally* Note, *The Maine Marital Property Act: The Duties of Divorce Courts and the Right to an Equitable Share of Marital Assets,* 31 Me.L.Rev. 333 (1980).

4. Set forth *supra* n. 2.

labor, an incentive is created to divert marital funds into improving separate property. Opportunities for overreaching by a sophisticated spouse or by one who has advice of counsel will be enhanced. Krauskopf, *supra*, at 184.

*Tibbetts* suggests a second reason that Mr. Hall's position is in error. The Law Court observed that the term "acquisition" must not be fixed arbitrarily and finally on the date that a legal obligation to purchase is created but rather should be recognized as including the ongoing process of making payment for that property. *Tibbetts*, 406 A.2d at 77. This dynamic interpretation of "acquisition" undercuts Mr. Hall's argument that the improvements to the house fit within the exception in section 722–A(2)(E) for "[t]he increase in value of property acquired prior to marriage." Under the reasoning in *Tibbetts*, the renovated and expanded sections of the house were not "acquired" until after the marriage. Section 722–A(2)(E) does not except capital improvements made with marital funds. *See Lee*, 87 Ill.2d at 66–67, 58 Ill.Dec. at 780, 430 N.E.2d at 1031.

Thus the marital estate has acquired an interest in the Liberty property based on the expenditure of marital funds for improvements. The marital share is the amount by which the use of marital funds has enhanced the value of the property, rather than merely the cost of the improvements. As the Supreme Court of New Mexico has noted:

> [T]ying the recovery in every case to the amount of money spent may produce results which, depending on extraneous circumstances, would be unfair either to the separate estate, or to the community, depending on whether the property increased or decreased in value. If the court would treat such expenditures as an equity investment of community funds, rather than a loan, the community would share in the fluctuations of the market, taking both the gains and the losses. In view of the inflationary forces at work in the economy at present, tying the recovery to the amount of expenditure in each case seems grossly unfair to the community.

*Portillo*, 97 N.M. at 64, 636 P.2d at 883 (quoting Bartke, *Yours, Mine and Ours— Separate Title and Community Funds*, 21 Baylor L.Rev. 137, 161 (1969)).

Although we reject the notion that the disputed property remains separate in character, we also reject the similarly Procrustean approach of the Illinois courts, which would treat the property as entirely marital. The language of section 722–A(2), which sets forth an exclusive list of nonmarital property, "indicates a legislative intent that the value of certain property not be subject to equitable distribution, and that the interests of spouses making nonmonetary contributions be protected without depriving the other spouse of nonmarital property." *Harper*, 294 Md. at 80, 448 A.2d at 929. To permit nonmarital property to be "transmuted" into marital property and thus to be subject to equitable distribution deprives a spouse of nonmarital property contrary to that legislative intent. *Id.; see* Feldman & Maher, *Classification of Property Upon Dissolution of Marriage: Suggestions for Maintaining our "Dual System" in the Aftermath of Smith*, 71 Ill.B.J. 100 (1982) (approach of Illinois courts has rendered the concept of nonmarital property in that state nearly illusory).

We decide that the source-of-funds rule best comports with the language and underlying policies of section 722–A and that the Superior Court erred in treating the disputed Liberty property as entirely marital. On remand, the court must allocate the disputed property between the marital and nonmarital estates, taking additional evidence if necessary and setting apart the nonmarital portion.[5] Next, the marital property must be divided in accordance with the standards set forth in section 722–A(1). The division of the Halls' other marital

---

**5.** An appropriate methodology is outlined in *Tibbetts*, 406 A.2d at 75 & 78.

property must be reexamined in light of our holding and readjusted as necessary.

The entry is:

That part of the judgment that orders distribution of the marital property, vacated.

Remanded for further proceedings consistent with this opinion.

All concurring.