532 A.2d 1046 (1987)
Ann Austin MACDONALD
v.
James Roger MACDONALD.
Supreme Judicial Court of Maine.
Argued September 16, 1987.
Decided November 2, 1987.
Ellyn C. Ballou (orally), South Freeport, and David P. Silk, Murray, Plumb & Murray, Portland, for plaintiff.
Charles E. Trainor (orally), Robert A. Laskoff, P.A., Lewiston, for defendant.
Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.
SCOLNIK, Justice.
The defendant, James R. Macdonald, appeals from a judgment entered by the Superior Court, Cumberland County, in the divorce action brought by his wife, Ann A. Macdonald, plaintiff, who cross-appeals. The defendant contends that the Superior Court erred in its award of alimony and in finding that the defendant's ownership interest in a business and certain real estate constituted marital property. In her cross-appeal, the plaintiff claims that the Superior Court erred in its division of marital property and in its treatment of the entire present value of certain business and real estate interests as separate, non-marital property of the defendant. We vacate the judgment.

I.
Ann A. Macdonald and James R. Macdonald first married in 1957. They were divorced in 1969, but were subsequently remarried in 1971. The parties lived together for all but six months of the period between their divorce and remarriage and after their remarriage, the property that had been divided in the first decree became part of the second marital estate. During *1047 the marriage the plaintiff primarily served as homemaker and primary caretaker of the parties' children. She was employed for two brief periods during their 29-year relationship and occasionally helped her husband with errands involving his automobile dealership business. During high school years the defendant began working at Macdonald Motors, his father's automobile business, located in Bridgton. He started as a mechanic but soon advanced to service manager and then to partner and part owner. In 1964, defendant, and his brother, Robert, began taking over the management responsibilities of the business from their father. In 1973, the father retired from active participation in the business and conveyed to defendant and Robert equally, the real estate on which Macdonald Motors is situated. In 1975, the father conveyed to the defendant and his brother equal shares of the ongoing business of Macdonald Motors. The transfers of the business and underlying real estate from the father to his sons were by gift.
By 1975, the defendant and his brother, Robert, were equal partners of Macdonald Motors. Instead of disbursing the profits to the partners, the partnership allowed them to accumulate for the purpose of acquiring other interests. This was accomplished by "parking" funds with the institution that provided Macdonald Motors with its "floor planning" loans. In 1976, using accumulated profits from the partnership, defendant and his brother purchased four lots known as Sandy Shore Cottages located adjacent to Woods Pond in Bridgton. In 1983, a fifth lot in the same location was also purchased with accumulated partnership profits. In 1983-1984 additional accumulated profits from the partnership were used by defendant and his brother to establish an automobile dealership in East Conway, New Hampshire, with a third brother, Daniel. Each brother contributed $41,667 for one share of stock, with defendant's and Robert's monies coming from partnership profits.
By judgment entered on December 9, 1986, the court granted a divorce based on irreconcilable marital differences. The court found as non-marital property the husband's partnership interest in Macdonald Motors, Bridgton, and his interest in the land on which it is situated. The court found as marital property the husband's interest in Macdonald Motors, Inc. in New Hampshire, the land underlying the New Hampshire automobile business, and the five Shady Shore cottages located at Woods Pond. The court's judgment divided other marital and separate property, allocated the marital property between the parties, and ordered the defendant to pay alimony to the plaintiff. The defendant subsequently filed a motion for findings of fact and conclusions of law, which the trial justice issued on January 12, 1987.

II.
The defendant contends that the Superior Court erred in finding as marital property the defendant's ownership interest in Macdonald Motors, Inc. in East Conway, New Hampshire, the real estate underlying the East Conway automobile business, and the five camp lots at Woods Pond. Under 19 M.R.S.A. § 722-A (1981), property acquired during a marriage is presumed to be marital property. Cushman v. Cushman, 495 A.2d 330, 334 (Me.1985). In claiming that the above property is non-marital or separate property, the defendant bears the burden of overcoming the statutory presumption. Id. (citing Moulton v. Moulton, 485 A.2d 976, 978 (Me.1984)). "The showing required to overcome the presumption is one of fact; thus, the decision of the divorce court whether the burden was successfully carried is reviewable only for clear error." Moulton, 485 A.2d at 978.
The defendant contends the following finding of fact by the trial justice was clearly erroneous:
In 1973 husband's father made a gift of [his automobile dealership] to husband and his brother, at which time the father essentially retired from the business. During the period from 1976 to 1983, husband and his brother used the accumulated income from the automobile business to acquire the parcels of rental real estate known as Shady Shores and to commence the additional automobile *1048 business known as MacDonald Motors, Inc. in East Conway, New Hampshire. This Court finds that the funds used by the husband and his brother to acquire the rental real estate and the New Hampshire automobile business, although undistributed, were earnings taxable to the parties and over which they had discretionary control. Accordingly, the properties acquired with these earnings were part of the marital estate.[1]
The defendant disputes the finding essentially on two related grounds: (1) that the proceeds from the Bridgton automobile business and the property purchased with those proceeds are not marital since the proceeds were never distributed by the partnership as income to the defendant, and never co-mingled with the personal funds of the defendant and/or plaintiff; and (2) that the Bridgton proceeds, and the property acquired with these funds, are excluded from the marital estate as income from a separate gift to the husband during marriage.
The defendant's first argument is without merit. The profits of a partnership are income to the partners, not the partnership, and they are taxed accordingly. 26 U.S.C.A. § 701 (West 1982). Partnership profits are personal income to the partners whether they are distributed or received. 26 C.F.R. § 1.702-1(a) (1986). See Bell v. Commissioner, 219 F.2d 442 (5th Cir.1955). This record clearly shows that the profits in question were indeed taxed to the defendant and his brother as income. Instead of distributing the taxable earnings, the partnership "parked" the profits in an account and allowed them to accumulate for purchases such as the camps and the New Hampshire dealership. The trial court did not err in finding that the partnership profits were income to the husband.
We next address the defendant's second point, whether the properties acquired with those partnership earnings of the defendant should be excluded from the marital estate since the earnings were income from separate, non-marital property. The trial court found the Bridgton business and its underlying real estate wholly separate on the ground they were gifts from the defendant's father to defendant and his brother, Robert.[2] Section 722-A(2) defines non-marital property as follows:
A. Property acquired by gift, bequest, devise or descent;
B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
C. Property acquired by a spouse after a decree of legal separation;
D. Property excluded by valid agreement of the parties; and
E. The increase in value of property acquired prior to the marriage.
Id. Although subpart (A) is clear that property acquired by gift, such as the Bridgton dealership, is non-marital, it is silent as to whether income from that property is also non-marital. We have previously considered the issue whether appreciation of mixed marital/separate property is part of the marital estate. See Hall v. Hall, 462 A.2d 1179 (Me.1983); Tibbetts v. Tibbetts, 406 A.2d 70 (Me.1979). However, we have not before addressed the question whether income from separate or mixed marital/separate property is also part of the marital estate.
In determining how income from a gift of separate property should be treated under § 722-A, we are guided by the Commissioner's Comments to the 1970 version of § 307 of the Uniform Marriage and Divorce Act on which § 722-A was modeled.[3]See Tibbetts, 406 A.2d at 73 n. 3, 75 n. 6. The Comment states:

*1049 The phrase "increase in value" used in subsection (b)(5) is not intended to cover the income from property acquired prior to the marriage. Such income is marital property. Similarly, income from other non-marital property acquired after the marriage is marital property. (emphasis added).
Handbook of the National Conference of Commissioners on Uniform State Laws, § 307, at 204 (1970). We also note that a majority of states follow this view and treat income during the marriage from separate property as part of the marital estate. Matthew Bender & Co., Family Law and Practice, § 37.08[7][c], at 37-134 (1987). See e.g., Speer v. Speer, 18 Ark. App. 186, 712 S.W.2d 659 (1986); In re Marriage of Reed, 100 Ill.App.3d 873, 56 Ill.Dec. 202, 427 N.E.2d 282 (1981); Brunson v. Brunson, 569 S.W.2d 173 (Ky.App. 1978); In re Marriage of Williams, 639 S.W.2d 236 (Mo.App.1982); Cain v. Cain, 536 S.W.2d 866 (Mo.App.1976); In re Marriage of Arneson, 120 Wis.2d 236, 355 N.W.2d 16 (1984).
We are persuaded by the Commissioner's Comments and the view expressed by a majority of courts that income from separate property during marriage constitutes marital property. Moreover, the defendant has failed to meet his burden of rebutting the statutory presumption that income generated during marriage must be treated as marital property. Accordingly, we conclude that the trial court was not clearly erroneous in finding that properties acquired with income from the non-marital Bridgton partnership were part of the marital estate.
In her cross-appeal, the plaintiff contends that the trial court erred in treating the entire present value of the Bridgton automobile business and underlying real estate as the separate property of the defendant.[4] She contends that even though the dealership was a gift and therefore separate property, the portion of the appreciation of the dealership attributable to marital funds or labor should be considered marital property. Since the question presented to the Law Court is essentially whether the trial court was correct in its decision that the defendant overcame 19 M.R.S.A. § 722-A's presumption of marital property, the standard of review remains that of "clear error." Moulton v. Moulton, 485 A.2d 976, 978 (Me.1984).
Whether the increase in value or appreciation of separate property is marital or separate is governed by the principles set forth in Hall v. Hall, 462 A.2d 1179 (Me. 1983); and Tibbetts v. Tibbetts, 406 A.2d 70 (Me.1979). In Hall, we considered the extent to which non-marital property acquired by one spouse prior to marriage becomes marital in character when it is renovated with marital funds. We rejected an "inception of title" rule that fixes the status of the property as either marital or separate as of the time title is first acquired regardless of the subsequent use of marital funds in improving marital property. 462 A.2d at 1180-81. We also rejected a doctrine of "transmutation" by which the application of any marital funds for improvements transmutes the separate property into marital property. Id. at 1181. We chose instead the "source of funds" rule in which the marital interest is determined by the ratio of marital and separate investments in the property. Id. This "source of funds" rule selected in Tibbetts and employed by the court in Hall comports with the partnership or shared enterprise theory underlying § 722-A. Hall, 462 A.2d at 1181; Tibbetts, 406 A.2d at 76-77.
The present case differs slightly from Tibbetts and Hall. Instead of involving the investment of marital and non-marital funds in either a separate or separate/marital property, it involves the appreciation of a property acquired by a husband as a gift during marriage. The "source of funds" rule is not limited, however, only to monetary investments in separate and mixed property. Hall specifically recognizes that improvements in separate property may be traced to labor as well as marital funds. Id. at 1181-82. The "source of funds" rule *1050 has been applied equally in other jurisdictions to marital funds used to both purchase and improve property, as well as to marital efforts where some portion of the increased value of separate property is attributable to the efforts of one or both spouses or the marital enterprise. See Family Law Reporter, § 37.08[3], at 37-121; Annotation, Divorce and Separation: Appreciation in Value of Separate Property During Marriage without Contribution by Either Spouse as Separate or Community Property, 24 A.L.R. 4th 453 (1983).
In applying the "source of funds" rule to the instant case, the marital estate is entitled to that portion of the increase in value of the Bridgton dealership from acquisition to time of trial that is attributable to marital effort. Under the partnership, or shared enterprise theory of Tibbetts, the "marital effort" would include both defendant's and plaintiff's activities that enhanced the property. Id., 406 A.2d at 76. Conversely, the defendant's separate non-marital estate is entitled to that portion of the increase in value of the Bridgton dealership attributable to the inherent value of the property and the economic factors affecting it. As stated by the Arizona Supreme Court:
[T]he increase in the value of separate property during marriage should be apportioned between the separate property of the owner and the community property of the spouses. Profit or increase in value of property may result either from the capital investment itself, or from the labor, skill and industry of one or both spouses or from both the investment of separate property and the labor and skill of the parties. Where both factors contribute to the increase in value of a business, that increase should be apportioned between separate and community property.
Cockrill v. Cockrill, 124 Ariz. 50, 601 P.2d 1334, 1338 (1979) (quoting Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625, 626 (1973)).
Initially, the burden of establishing an increase in value of separate property occurring during marriage is on the party asserting that increase. Once an increase has been established, under the statutory presumption in § 722-A in favor of marital property, the burden is on the spouse who "contends that the increase is ... separate property to prove that the increase is the result of the inherent value of the property itself and is not the product of the work effort of the community." Cockrill, 601 P.2d at 1336. Because these parties do not dispute that the value of the separate property increased from the time of acquisition to the date of divorce, the statutory presumption becomes operative. Although the defendant in the instant case presented sufficient evidence to establish that the Bridgton dealership was a gift and therefore separate, he did not sustain his burden of establishing that its increase in value during the marriage was also separate. The trial court therefore erred in treating the entire present value of the dealership as the defendant's separate property.
On remand, the court must allocate the increase in value of the Bridgton dealership between the marital and non-marital estates, taking additional evidence if necessary. We further vacate and remand the remainder of the judgment to enable the trial court to reexamine and readjust as necessary the award of alimony and the distribution of property in light of its changes in the reallocation of the Bridgton dealership. See Dunning v. Dunning, 495 A.2d 821, 824 (Me.1985); Grishman v. Grishman, 407 A.2d 9, 12 (Me.1979); Young v. Young, 329 A.2d 386, 392 (Me. 1974). Since we are remanding the entire judgment, we need not address the defendant's appeal of the award of alimony and the plaintiff's cross-appeal of the division of property. We trust that on remand the court will remain within the bounds of its discretion in its award of alimony and will make any necessary changes in the division of marital property in accordance with the requirements of 19 M.R.S.A. § 722-A(1) (1981).
The entry is:
*1051 Judgment vacated.
Remanded for further proceedings consistent with the opinion herein.
All concurring.
NOTES
[1] The trial court found that a gift of the business was made in 1973. Testimony at trial, however, indicates that the land was conveyed in 1973 but the business was transferred in 1975.
[2] In so concluding, the trial court treated as non-marital the appreciation in value of those properties since they were given to the defendant. In her cross-appeal, the plaintiff contests this treatment of the appreciation.
[3] Other portions of the same Comment to § 307 have been useful in clarifying § 722-A. See Tibbetts, 406 A.2d at 78.
[4] Subsequent references to the "Bridgton dealership" or "dealership" are meant to include the Bridgton automobile business and the real estate on which it is situated.