Lauris J. WILLIAMS

v.

Richard WILLIAMS III.

Supreme Judicial Court of Maine.

Submitted on Briefs March 4, 1994.
Decided Aug. 1, 1994.

Robert E. Sandy, Jr., Sherman, Sandy & Lee, Waterville, for plaintiff.

Burton G. Shiro, Shiro & Shiro, Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ., and COLLINS, A.R.J.*

DANA, Justice.

Richard Williams appeals from a judgment of the Superior Court (Kennebec County, *Chandler, J.*) affirming the divorce judgment entered in the District Court (Waterville, *Mills, J.*). Richard contends that the District Court erred in determining that certain property was marital, made errors in its calculations, and abused its discretion in or-

---

*Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was

dering him to make a cash payment to his wife. We agree with some of his contentions and vacate the judgment.

Richard and Lauris Williams were married in December 1978. Lauris filed for a divorce in 1990, and the trial was held in 1992. Because there were no children of the marriage, the primary issues before the trial court were the characterization and division of property.

Both before and during the marriage, the parties acquired a substantial amount of real and personal property. Richard's average annual income during the later years of the marriage was $35,000, while Lauris's was $16,000. At the time of trial, Lauris had been unemployed for eight months.

The court determined what property was marital and what was nonmarital, awarded $185,606 in marital property to Richard and $141,163 in marital property to Lauris, and ordered Richard to make a $55,000 cash payment to Lauris. Both parties were ordered to pay their own attorney fees and neither party was ordered to pay alimony. Richard's appeal to the Superior Court was denied, and this timely appeal followed.

## I. Determinations of Marital and Nonmarital Property

Pursuant to 19 M.R.S.A. § 722–A (1981), a trial court must:

(1) determine what of the parties' property is marital and what is nonmarital, including the contributions each may have made to the acquisition of the marital property, recognizing the contribution of a spouse as a homemaker;

(2) set apart to each that spouse's nonmarital property; and

(3) divide the marital property between them in such proportion as the court deems just.

*West v. West,* 550 A.2d 1132, 1133 (Me.1988). A court's determination of what property is marital or nonmarital is reviewed for clear error, and will not be disturbed if there is competent evidence in the record to support

authorized to continue his participation in his capacity of Active Retired Justice.

it. *Id.* "[Nonmarital] property must be set apart, and to the extent practicable, transferred to the spouse owning it without the court exercising any discretion." *Id.*

The court determined that real property located at Gagnon Road (the marital home) and Elm Street (the apartment buildings) had both marital and nonmarital components. The court further determined that real property located at School Street (an apartment building) and North Pond (a summer cabin), as well as a boat and motor, were entirely marital. Richard argues that the court erred in these determinations and, in some cases, made errors in its calculations.

### A. *The Gagnon Road Property*

Richard obtained title to the land on Gagnon Road in July 1978, five months before the marriage. Both parties testified that Richard received $16,000 in proceeds from the sale of his prior home, used $5,000 of that amount to purchase the land, and applied the remainder to building the marital home.[1] In November 1978 Richard borrowed $24,000 in his own name to finish the house. He made monthly payments of $230 from his paycheck throughout the marriage.

The trial court awarded the Gagnon Road property to Richard. It concluded that the property was partly nonmarital (because of Richard's $16,000 "nonmarital contribution") and partly marital (because mortgage payments were made throughout the marriage). The court valued the property at $87,000, subject to the current mortgage balance of $12,450, and calculated that Richard had received $60,250 in marital property.

■ Richard argues that the court erred in concluding that he had received $60,250 in marital property, offering the following calculation:

|   | $87,000 | (total value) |
|---|---|---|
| - | $12,450 | (mortgage) |
| = | $74,550 | (total equity) |
| - | $16,000 | (Richard's nonmarital contribution) |
| = | $58,550 | |

According to Richard, the court increased his marital property award by $1,700 ($60,250 −

---

1. Although Lauris maintains in her brief that Richard failed to prove that he invested the en-

$58,550), and attributes this to a mathematical or clerical error. Because we find no evidence in the record to support this increase, we agree with his contention and, on remand, instruct the trial court to decrease the total amount of his marital award by $1,700.

Richard also contests the court's ruling that all of the equity in the property over and above his $16,000 contribution was marital. He first argues that because he acquired title to the property before the marriage, there is no presumption that it is marital. *See* 19 M.R.S.A. § 722–A(3) (1981). He asserts that the burden was on Lauris to prove that a portion of the property's value is attributable to marital effort. We disagree.

■ Title 19 M.R.S.A. § 722–A(3) provides in pertinent part as follows:

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety and community property.

Whether the above presumption applies depends on when the property was "acquired." In *Tibbetts v. Tibbetts*, 406 A.2d 70, 77 (Me. 1979), we adopted the "dynamic" definition of acquisition, meaning that property is deemed to be acquired as it is paid for. In situations where a spouse obtains title to real property before the marriage, but mortgage payments are made during the marriage, the property will include both marital and nonmarital components. *See Hall v. Hall*, 462 A.2d 1179, 1181–82 (Me.1983).

■ Since the Gagnon Road property continued to be "acquired" during the marriage, the presumption of section 722–A(3) applies. In order to overcome the presumption, Richard had the burden of showing what portion of the property was nonmarital. *See Stevenson v. Stevenson*, 612 A.2d 852, 854 (Me.1992) ("The party claiming that a piece of property is nonmarital bears the burden of proof on that issue at trial.").

---

tire $16,000 in the marital home, she conceded this point at trial.

Richard presented the following evidence of his nonmarital contributions at trial: (1) his $16,000 investment, (2) his efforts towards the construction of the house prior to the marriage, and (3) the fact that the house was "liveable" at the time of the marriage. It is significant that Richard offered no evidence of the value of the property at the time of the marriage, the value of his work, or the extent to which the property or his nonmarital contributions thereto appreciated during the course of the marriage. From this record, it was not clear error for the court to value Richard's nonmarital contribution at $16,000. *Cf. Bishop v. Bishop,* 541 A.2d 930, 932 (Me.1988) (where the record "contains no evidence of any appreciation attributable to land alone, and it contains no evidence of the value of the [husband's nonmarital] property at the time that substantial marital assets were invested," husband did not meet his burden of overcoming statutory presumption that property's appreciation was marital).

■ Richard also argues that the court erred in allocating all of the property's appreciation ($87,000 − $16,000 − $24,000 = $47,000) to the parties' marital contributions. Again we disagree. The record reveals that during the marriage Richard and Lauris made unspecified marital improvements to the property and reduced the mortgage by $11,550. In light of these marital contributions, and in the absence of any evidence showing either the existence of, or the amount of, any property appreciation attributable to nonmarital contributions, the court's decision to allocate all of the increase in value to the marital estate was not clearly erroneous. In short, Richard had the burden of showing how the value of his nonmarital contributions appreciated, and he failed to carry this burden. *See Macdonald v. Macdonald,* 532 A.2d 1046, 1050 (Me.1987) (spouse who contends that increase in property value is nonmarital has burden of proving that the increase is the result of the inherent value of the property and not the product of the work effort of the community).[2]

■ Richard also argues that because all of the mortgage payments came from his salary, he should be entitled to a larger nonmarital share. This argument has no merit. The fact that Richard's salary paid for the mortgage does not make the property nonmarital. *Cf. Hall,* 462 A.2d at 1181 (money earned and invested during a marriage represents an investment of marital funds).

### B. *The Elm Street Properties*

Richard purchased two apartment buildings at 32 and 39 Elm Street in January 1977, nearly two years before the marriage. Richard and Lauris testified that these properties were the "money-makers," earning an average of $22,000 per year in rental income. Lauris testified that they had been appraised at $125,000. Richard testified that he made the mortgage payments for these properties throughout the marriage and that the current balance of the mortgage was about $35,000. He presented no evidence of the original purchase price, down payment, or financing terms.

The trial court valued the Elm Street properties at $125,000, subject to the $35,000 mortgage, and awarded them to Richard. Although Richard presented no evidence of a nonmarital contribution, the court deter-

---

2. We note that this case is distinguishable from *Bishop,* 541 A.2d 930, where we held that the divorce court erred in its allocation of appreciation between the parties' marital and nonmarital estates. In *Bishop,* the trial court found that (1) the husband's cottage was worth $50,000 at the time of the marriage and had appreciated in value to $160,000 at the time of the divorce, (2) $30,000 of the property's appreciation was traceable to the parties' marital investment of $7,500, and (3) the remaining appreciation was traceable to the inherent value of the property at the time of the marriage. We held that this allocation was clearly erroneous because it was "logically impossible" for the marital investment to have appreciated at such a higher rate than the nonmarital investment. *Id.* at 932. Although the court in the present case allocated *none* of the Gagnon Road property's appreciation to Richard's $16,000 investment, this was not clear error because there was evidence in the record that the parties worked on the property during the marriage, and there was no evidence of the property's value at the time of the marriage. In the absence of evidence to the contrary, the court properly concluded that all of the appreciation was allocable to the parties' marital efforts.

mined that his nonmarital share was $11,612, based on the following calculations:

$$
\begin{array}{ll}
\$90,000 & \text{(equity)} \\
\div\ 15.5\ \text{years} & \text{(number of years from purchase date)} \\
\hline
=\ \$5,806 & \\
\times\ 2\ \text{years} & \text{(length of Richard's premarital ownership)} \\
\hline
\$11,612 & \text{(nonmarital share)}
\end{array}
$$

Richard was awarded $11,612 in nonmarital equity and $78,388 in marital equity.

Richard contends that the court's determination of his nonmarital share was clearly erroneous. Once again he emphasizes the fact that he obtained title to the properties before the marriage. He concedes there was no evidence of the original purchase price or the amount financed, but asserts that "any increase in value from the time of acquisition is attributed to the natural appreciation of the property, rather than to marital effort."

Since mortgage payments were made during the marriage, the presumption that the property was marital applies. Pursuant to 19 M.R.S.A. § 722–A(3), Richard had the burden of proving what portion of the property was nonmarital. In light of his failure to present any evidence at trial, we cannot conclude that the court's allocation between marital and nonmarital property was clearly erroneous.

### C. *The School Street Property*

■ Richard and Lauris purchased the School Street property after the marriage. They both testified that it was worth $64,000. Richard believed the mortgage balance was $30,000, while Lauris believed it was about $27,000. According to Lauris, the current equity was therefore $37,000.

The trial court ruled that the property was marital and awarded it to Lauris. The court found that the property was worth $64,000 and was encumbered by a *$37,000* mortgage. Thus, the court charged Lauris with receiving only $27,000 in marital property. Despite this apparent error, Richard did not file a motion to correct pursuant to M.R.Civ.P. 60(a).[3]

On appeal Richard argues that the court inadvertently switched the figure for Lauris's marital equity ($37,000) with the amount of the mortgage ($27,000). As a result, Lauris was credited with $10,000 less in marital equity than she received. Lauris responds that Richard made no attempt to bring this alleged error to the trial court's attention pursuant to M.R.Civ.P. 60(a), implying that he waived his right to raise this issue on appeal.

Although Richard could have filed a Rule 60(a) motion, we are unaware of any requirement that he must do so in order to preserve this issue for appeal. From our review of the record, it appears that the court erroneously understated by $10,000 Lauris's actual award of marital property. On remand, the trial court should increase the total amount of her award by $10,000.

### D. *The North Pond Property*

The North Pond property was acquired in both parties' names before their marriage. The purchase price was between $11,000 and $15,000. The down payment was $3,000, but the parties disagreed as to who made it. Richard claimed he made the payment, while Lauris claimed that she paid half of it. There was also conflicting testimony as to the current value of this property. Richard testified that it was worth $30,000, while Lauris testified that it was worth $45,000. According to Lauris, there was no mortgage on the property at the time of the trial, although the parties made mortgage payments during the marriage. The trial court found that the property was entirely marital, valued it at $40,000, and awarded it to Lauris.

Richard argues that he should have been awarded a nonmarital share of $3,000 representing his premarital down payment. He also contends that any enhancement of the property's value resulted from his efforts, which should have resulted in an even larger nonmarital award. We disagree with these contentions, but nevertheless conclude that

---

**3.** M.R.Civ.P. 60(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party."

the court erred in determining that the property was entirely marital.

■ Although the parties obtained title to the North Pond property before their marriage, they made mortgage payments during the marriage, thereby creating the presumption that it was marital property. *See* 19 M.R.S.A. § 722–A(3). The evidence was undisputed, however, that a $3,000 down payment was made before the marriage. In light of this investment of nonmarital funds, the trial court's conclusion that the property was entirely marital is clearly erroneous. *Cf. Smith v. Smith,* 472 A.2d 943, 945 n. 2 (Me. 1984) ("We have declined to expand the definition of marital property to encompass property acquired while the parties lived together prior to marriage.").

■ Although the court erred, we reject Richard's contention that he should have been awarded the full $3,000 as his nonmarital property. Richard presented no corroborating evidence to support his testimony that he made a $3,000 investment of nonmarital funds, and the court was not required to accept his undocumented assertion to this effect. *See Cushman v. Cushman,* 495 A.2d 330, 334 (Me.1985) ("A divorce court is never obliged to accept as proved one party's undocumented and conclusory statements."). Moreover, Lauris testified that she paid for half of the down payment, which the trial court may have accepted as true. On remand, the court must determine each party's nonmarital share of the $3,000 down payment and adjust Lauris's marital award for this property to $37,000.

### E. *The Boat and Motor*

Both parties testified that they acquired a boat and motor during the marriage and that they were worth $8,000. Lauris testified that the parties paid for the boat with the proceeds of a loan, and that the remaining balance was $4,800. The court awarded the boat and motor to Richard and determined that he had received the full $8,000 in marital equity.

■ Because the boat was encumbered by a $4,800 loan, Richard contends that the $8,000 allocated to him (rather than the actual equity of $3,200) was clearly erroneous. Because the record reveals no explanation for this discrepancy, we agree with Richard's contention and, on remand, instruct the trial court to decrease his marital award by $4,800.

### II. *The Division of Marital Property*

■ The disposition of marital property is a matter committed to the sound discretion of the trial court, and is reviewable only for abuse of discretion. *Axtell v. Axtell,* 482 A.2d 1261, 1263 (Me.1984). Absent a violation of some positive rule of law, we will overturn the trial court's decision "only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Anderson v. Anderson,* 591 A.2d 872, 874 (Me.1991) (citation omitted).

■ The trial court awarded $185,606 in marital equity to Richard and $141,163 in marital equity to Lauris. The court also ordered Richard to make a $55,000 payment to Lauris because (1) he was awarded $44,443 more in marital property than Lauris, (2) during the couple's separation, he wrote $6,625 in checks to his girlfriend and $5,679 in checks to "cash," (3) the Elm Street properties (the "money makers") were awarded to him, (4) Lauris was currently unemployed, and (5) Richard earned an annual salary of $35,000.

Richard first points out that as a result of the $55,000 payment, he was awarded $130,606 and Lauris was awarded $196,163. He therefore received about forty percent of the total marital equity, while Lauris received sixty percent. Although he acknowledges that the division of marital property need not be equal, it must be "just." *See Deditch v. Deditch,* 584 A.2d 649, 652 (Me.1990). He contends that this distribution was not just because of the work he put into the various properties. Richard also argues that because the court made errors in its calculations, one of its premises for the cash award (the $44,443 difference in the parties' marital awards) was false.[4]

---

4. Taking the errors into account, there was actu-

ally a $30,943 difference in the awards:

Putting aside the court's errors, it does not appear that the court abused its discretion in making the cash award. Pursuant to 19 M.R.S.A. § 722–A(1), the court must divide the marital property between the parties as it deems just. *Grishman v. Grishman*, 407 A.2d 9, 11 (Me.1979). In making this division, the court may consider "a wide range of pertinent factors." *Id.* at 12. "Although the idea of an equal allocation may certainly be entertained by a divorce court, it carries no presumptive weight either in its favor or against it." *Robinson v. Robinson*, 554 A.2d 1173, 1176 (Me.1989). Moreover, we have upheld unequal divisions in the past. *See, e.g., Bryant v. Bryant*, 411 A.2d 391, 393 (Me.1980); *Zillert v. Zillert*, 395 A.2d 1152, 1155–1156 (Me.1978). Since 19 M.R.S.A. § 722–A(1)(C) instructs the court to consider the economic circumstances of each spouse in dividing the marital property, and given Lauris's unemployment and earning potential, it does not appear the court abused its discretion. If, however, the trial court's errors would have affected the amount of the cash award, then the court could, in the exercise of its discretion, adjust the amount on remand. *See Macdonald*, 532 A.2d at 1050 (in remanding divorce judgment, we expect that the trial court "will remain within the bounds of its discretion . . . and will make any necessary changes in the division of marital property in accordance with the requirements of 19 M.R.S.A. § 722–A(1) (1981)"). Contrary to Richard's contention, the court is not required to do so.

The entry is:

Judgment vacated. Remanded to the Superior Court with directions to remand to the District Court for further proceedings consistent with the opinion herein.

WATHEN, C.J., ROBERTS, GLASSMAN and RUDMAN, JJ., and COLLINS, A.R.J., concurring.

| | Lauris | Richard |
|---|---|---|
| Court's award: | $141,163 | $185,606 |
| Gagnon Road adjustment: | — | (1,700) |
| School Street adjustment: | 10,000 | — |
| North Pond adjustment: | (3,000) | — |
| Boat/motor adjustment: | — | (4,800) |
| Adjusted award: | $148,163 | $179,106 |

CLIFFORD, Justice, dissenting.

Because in my view, the trial court failed to properly credit Richard Williams for an amount approximating the full extent of his nonmarital interest in the Gagnon Road and Elm Street properties in Fairfield, I respectfully dissent.

When land is purchased and buildings are constructed by one party prior to the marriage, absent a conveyance to the spouse that property remains nonmarital throughout the marriage and is not converted to marital property simply by virtue of the marriage. *West v. West*, 550 A.2d 1132, 1134 (Me.1988). Moreover, the nonmarital estate must be credited with any increase in the value of that nonmarital property during the marriage. *Id.;* 19 M.R.S.A. § 722–A(2)(E) (1981). Although Richard introduced no expert evidence as to the allocation of the increase in value between the marital and nonmarital portions of the property, the lack of such evidence does not justify the result reached by the court.

The evidence did show that the Gagnon Road property was acquired by Richard prior to the marriage, and that he invested $16,000 of his own money in the property. Moreover, the building was substantially complete at the time of the marriage in 1978. The marital contribution to the property consisted only of payments on the mortgage (reduced from the $24,000 borrowed to a balance of $12,450 at the time of the divorce) and some carpentry work by Richard and Lauris during the marriage. The court, however, determined that of the property's $87,000 value in 1992, only $16,000, the amount of Richard's actual cash investment in the property prior to the marriage, was nonmarital. The court credited the marital estate with the *entire* increase in the value of the land and buildings between 1978 and 1992 and *none* to Richard's nonmarital estate despite Richard's initial investment and ownership. To uphold such a result, this court erroneously applies the presumption of 19 M.R.S.A. § 722–A(3) (1981), that property is marital,

to *all* of the Gagnon Road property. By its terms, however, this presumption applies only to that part of the property *acquired,* i.e., paid for or improved, subsequent to the marriage. *See West,* 550 A.2d at 1134 (clear error for trial court to credit husband's non-marital estate with only twenty-three percent of the value of the property when land was purchased and barn and seventy-five percent of house were constructed by husband prior to marriage).

Although less egregious, the trial court similarly erred in apportioning the apartment buildings located on Elm Street, purchased by Richard nearly two years prior to the marriage, crediting the nonmarital estate with only $11,612, or nine percent of their $125,000 value. *See West,* 550 A.2d at 1134.

I would vacate the divorce judgment and remand for a redetermination of all economic issues.