1999 ME 77

Arthur P. CLUM

v.

Ruth H. GRAVES.

Supreme Judicial Court of Maine.

Submitted on briefs March 12, 1999.

Decided May 19, 1999.

Kenneth P. Altshuler, Altshuler Vincent & Karitz, Portland, for plaintiff.

Ellyn C. Ballou, South Freeport, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Arthur P. Clum appeals from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) affirming the divorce judgment of the District Court (Portland, *Beaudoin, J.*). The divorce judgment treats the increases in the values of nonmarital property that occurred during the course of the marriage as marital property. Clum contends that those increases, or a substantial part of them, should be characterized as nonmarital property. Clum also contends that the trial court acted beyond its discretion when it ordered him to pay $7500 of Graves's attorney fees. Finding no error or abuse of discretion, we affirm the judgment.

[¶ 2] Arthur Clum and Ruth Graves were married on June 10, 1988. At the time of the marriage, Clum owned a First Nationwide CD account valued at $7800, a Fidelity Aggressive Tax–Free Mutual Fund worth $12,558, a Van Kampen IRA worth $2258, and a Fidelity IRA worth $6186. After the marriage, Clum made no further investments in these accounts, except the Fidelity IRA. During their marriage. Clum and Graves purchased a condominium in South Portland, and Clum also purchased property in Cape Elizabeth with his father as joint tenants. To place a down payment on the Cape Elizabeth property, Clum cashed in the First Nationwide CD and the Fidelity Aggressive Tax–Free Mutual Fund. At the time Clum purchased the property, the First Nationwide CD was valued at $11,012, and the Fidelity Mutual Fund was worth approximately $20,000. Following the death of his father, legal title to the Cape Elizabeth property vested in Clum's name alone.

[¶ 3] The complaint for divorce was filed by Clum in July of 1995. The parties disputed the proper characterization and distribution of the above assets.[1] On June 7, 1997, after a hearing, the District Court entered a divorce judgment. Clum filed a motion for findings of fact and conclusions of law. The District Court issued findings of fact and conclusions of law that incorporated the original divorce judgment. The District Court valued the condominium in South Portland at $78,000, with a mortgage balance of $46,000 and awarded the property to Graves. The District Court valued the Cape Elizabeth property at $335,000, with a mortgage balance of $195,000, and concluded that 35% of the $140,000 net equity, or $49,000, is marital property. To arrive at this figure, the District Court considered the value of the First Nationwide CD that was used to purchase the property:

> There was no evidence introduced at trial as to whether the increase in value was attributable to income and dividend reinvestment, stock split, market growth or appreciation. The maximum nonmarital contribution by [Clum] towards the purchase of the Cape Elizabeth real estate from the account would therefore be [$7800] [the value of the First Nationwide CD at the time of the marriage].

The District Court also considered the value of the Fidelity Mutual Fund:

> [Clum] made no further investments in this account after the time of the marriage. There was no evidence introduced at trial as to whether the increase in value was attributable to income and dividend reinvestment, stock split, market growth or appreciation. The maximum non-marital contribution by [Clum] towards the purchase of the Cape Elizabeth real estate from this account would therefore be [$12,558] [its value at the time of the marriage].

---

1. Clum and Graves have no children. At the time of the divorce, Clum worked as an advocate for the Department of Mental Health and Mental Retardation, earning approximately $34,000 per year. Graves was the Director of the Maine Center for Women, Work and Community, earning approximately $21,000 per year. Both continue to work in the same positions. The South Portland condominium is Graves's current residence. Clum lives at the Cape Elizabeth property.

Ultimately, the trial court awarded the Cape Elizabeth property to Clum.

[¶ 4] The District Court valued the Van Kampen IRA at $7820 and the Fidelity IRA at $49,558. Again, the District Court characterized the entire increases in the values of these two assets during the course of the marriage as marital property, concluding that Clum presented no evidence identifying the sources of the increases. The District Court awarded the Van Kampen IRA to Clum, as well as the nonmarital portion of the Fidelity IRA. The increase in the value of the Fidelity IRA during the course of the marriage was awarded to Graves.[2]

[¶ 5] Clum subsequently filed a motion for relief from judgment pursuant to M.R. Civ. P. 60(b), disputing the District Court's characterization of the increases in the values of his nonmarital property during the course of the marriage as entirely marital. Specifically, Clum challenged the District Court's findings that Clum had not presented evidence showing the sources to which the increases in the values of the nonmarital property were attributable .[3] The District Court granted Clum's motion for relief from judgment and scheduled an additional hearing regarding the distinctions between marital and nonmarital property. Graves simultaneously filed a motion for attorney fees pursuant to M.R. Civ. P. 80(d) and 19 M.R.S.A. § 693 (1995) (now 19–A M.R.S.A. § 904(1) (1998)).[4]

[¶ 6] During the second hearing, Clum again testified that no contributions were made to the First Nationwide CD after the marriage and no amounts were withdrawn from the First Nationwide CD until Clum purchased the Cape Elizabeth property. According to Clum, "[i]t just continued to renew and renew and renew, and paid interest continually." Clum admits that any appreciation in the value of this account resulted from interest paid. With respect to the Fidelity Mutual Fund, Clum testified that the appreciation that occurred subsequent to their marriage resulted from the reinvestment of dividends and capital gains, and changes in the price of the shares. With respect to the Van Kampen IRA, Clum asserted in testimony that "any increase was nonmarital because there was no more money put back into that IRA." The only asset in which money was deposited every year was the Fidelity IRA. Clum's attorney explained that the values of the nonmarital assets increased during the course of the marriage "by interest, dividends or capital gains reinvestment, rather than ... the parties putting more money into [them]." Clum testified that the money in all of these accounts is too interwoven to be able to determine which portion of the appreciation is attributable to interest, dividends, capital gains, or market fluctuations.[5] No expert testimony was presented.

[¶ 7] The trial judge warned the attorneys, "Frankly, I'm getting nothing out of this testimony, other than what I already had, which was that the increase in value is due to four different components, and

2. The District Court's division of the remaining marital property, as well as its award to Graves of $1 yearly alimony and $1000 lump sum alimony for the purchase of a hearing aid, are not in dispute on appeal.

3. Clum contends that the District Court, during a chamber conference, assured him that the increases in the values of the nonmarital property remained nonmarital property and that he refrained from presenting additional evidence in reliance on the court's statements.

4. At the time Clum filed the complaint for divorce, Title 19 was still in effect. The District Court and the Superior Court relied on Title 19 in deciding this case. The Legislature repealed Title 19 in P.L.1995, c. 694, § B–1 and recodified its provisions in Title 19–A. See P.L.1995, c. 694, § B–2. The statutory cites in this opinion will refer to the Title 19 section as it existed at the time of the District Court decision and reference the recodified section. With respect to the sections relevant to this opinion, the statutory language is virtually identical.

5. Clum admitted that several assets were subject to some stock price depreciation, and not solely appreciation, as a result of market fluctuations.

[Clum] can't testify as to—to what extent each component caused the increase or may have caused the decrease." The trial judge then requested a memo outlining the assets Clum contends were incorrectly characterized, suggesting the appropriate characterization of the assets, and suggesting any impact that characterization would have on the divorce decision. In response to this request, Clum submitted a memorandum contending that *Harriman v. Harriman*, POR–93–DV–882,[6] the decision on which the trial court relies, was improperly decided. Clum made no attempt, however, to attribute the increases in the values of the nonmarital property to specific sources.

[¶ 8] The District Court explicitly followed the Superior Court's analysis in *Harriman* and issued a new judgment with new findings of fact and conclusions of law. The findings and conclusions are nearly identical to those in the original judgment. The only significant difference is that, although the original judgment ordered the parties to pay their own fees, the court, in its new judgment, ordered Clum to pay $7500 of Graves's attorney fees. The Superior Court affirmed the District Court's divorce judgment and this appeal followed.

6. At the time of the District Court hearing, the Superior Court had decided the *Harriman* case, but we had not heard the appeal. We rendered our decision in *Harriman*, 1998 ME 108, 710 A.2d 923, prior to the Superior Court's affirmance of the District Court's divorce judgment.

7. Section 722–A(3), the language of which is identical to the current section 953(3), provides:

*All property acquired by either spouse subsequent to the marriage* and prior to a decree of legal separation *is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety and community property.* The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2. (Emphasis added.)

## I. MARITAL v. NONMARITAL PROPERTY

[¶ 9] When a Superior Court acts in an appellate capacity, we directly review the record of the District Court. *See Nordberg v. Nordberg*, 658 A.2d 217, 219 (Me.1995). The District Court's characterization of property as marital or nonmarital is reviewed for clear error. *See id.; see also Harriman v. Harriman*, 1998 ME 108, ¶ 8, 710 A.2d 923, 925. As long as there is competent evidence in the record to support the District Court's characterization, the characterization will be affirmed. *See Nordberg*, 658 A.2d at 219.

[¶ 10] Property acquired during marriage is presumed to be marital property. *See* 19 M.R.S.A. § 722–A(2) & (3) (now 19–A M.R.S.A. § 953(2) & (3) (1998));[7] *Cushman v. Cushman*, 495 A.2d 330, 334 (Me.1985). A party seeking to characterize property acquired during marriage as nonmarital property has the burden of rebutting the statutory presumption. *See* 19 M.R.S.A. § 722–A(2) & (3); *Macdonald v. Macdonald*, 532 A.2d 1046, 1047 (Me.1987). If a party presents evidence to show that the purchase of such property was financed in part with nonmarital funds, the portion of the value of

Section 722–A(2), the language of which is identical to the current section 953(2), provides:

For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:

A. Property acquired by gift, bequest, devise or descent;

B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

C. Property acquired by a spouse after a decree of legal separation;

D. Property excluded by valid agreement of the parties; and

E. The increase in value of property acquired prior to the marriage.

These statutes represent the Legislature's adoption of the "shared enterprise or partnership theory" of marriage. *See Long v. Long*, 1997 ME 171, ¶ 7, 697 A.2d 1317, 1320.

the property attributable to the nonmarital funds can remain nonmarital. *See Cushman*, 495 A.2d at 334. The statutory presumption, however, is irrebuttable if the property is acquired during the marriage in joint tenancy with the spouse.[8] *See Long v. Long*, 1997 ME 171, ¶¶, 15–17, 697 A.2d 1317, 1323–24.

[¶ 11] Because Clum purchased the Cape Elizabeth property while married to Graves, the property is presumed to be marital property. *See* 19 M.R.S.A. § 722-A(2) & (3). Clum purchased the property as a joint tenant with his father, not with Graves. Thus, the presumption is rebuttable. *See id.; Long*, 1997 ME 171, ¶¶ 15–17, 697 A.2d at 1323–24. Clum presented evidence to show that a portion of the down payment for the property was derived from property he had acquired prior to the marriage, namely the First Nationwide CD and the Fidelity Mutual Fund. The parties do not dispute that the value of the Cape Elizabeth property attributable to the value of the First Nationwide CD and the Fidelity Mutual Fund at the time of the marriage is nonmarital property. The dispute lies in the characterization of the *increases* in the values of these assets, as well as the Van Kampen IRA and the Fidelity IRA, that occurred during the course of the marriage.

[¶ 12] Although property acquired prior to marriage constitutes nonmarital property, any increase in the value of nonmarital property over the course of a marriage is presumed to be marital property. *See* 19 M.R.S.A. § 722-A(2) & (3); *Nilsen v. Hanson*, 1998 ME 109, ¶ 5, 709 A.2d 1190, 1191. Again, a party seeking to characterize the increase in the value of nonmarital property that occurs during marriage as nonmarital property has the burden of rebutting the statutory presumption. *See* 19 M.R.S.A. § 722-A(2) & (3); *Macdonald*, 532 A.2d at 1047.

[¶ 13] Increases in value attributable to income from nonmarital property that accrues during marriage and is reinvested in the property is marital property. *See Harriman*, 1998 ME 108, ¶ 7, 710 A.2d at 924 (citations omitted). The comment to section 307 of the Uniform Marriage and Divorce Act, after which section 722-A is modeled, explains,

> The phrase "increase in value" used in subsection [2(E) ] is not intended to cover the income from property acquired prior to the marriage. Such income is marital property. Similarly, income from other nonmarital property acquired after the marriage is marital property.

*See Macdonald*, 532 A.2d at 1048–49 (quoting HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS § 307, at 204 (1970)) (emphasis omitted). Income from nonmarital property, or any other source, constitutes marital property because it is generally attributable to marital effort.[9] Marital effort refers to either

8. Prior to *Long*, a party could rebut the presumption that property acquired during marriage in joint tenancy with the spouse is marital property by presenting evidence to show the source of the funds used to purchase the property. *See Tibbetts v. Tibbetts*, 406 A.2d 70, 74–75 (Me.1979). If the property was purchased, at least in part, with nonmarital funds, the portion of the purchase price attributable to nonmarital funds would remain nonmarital property. *See id.* In *Long*, however, we overruled the line of cases that first established the "source of the funds" rule. *See* 1997 ME 171, ¶¶ 12, 15–16, 697 A.2d at 1322, 1323–24 (overruling *Tibbetts*, 406 A.2d 70). The opinions in *Long* and *Tibbetts* involve the characterization of assets purchased by spouses during marriage *as joint owners*, at least in part, with one spouse's nonmarital assets. *See Long*, 1997 ME 171, ¶ 2, 697 A.2d at 1319; *Tibbetts*, 406 A.2d at 73. In *Long*, we held that jointly owned property must be characterized as marital property *on account of the joint form of ownership*, regardless of the source of the funds that financed the property purchased. *See* 1997 ME 171, ¶¶ 15–17, 697 A.2d at 1323–24. The *Long* decision, however, does not preclude the use of the "source of the funds" rule to rebut the presumption that property acquired during marriage by one spouse, but not held in joint tenancy with the other spouse, is marital property.

spouse's activity that enhances the property. *See Macdonald,* 532 A.2d at 1050. On the other hand, an increase in value attributable to the inherent value of the nonmarital property and the economic factors affecting it is nonmarital property. *See Macdonald,* 532 A.2d at 1050. If the appreciation occurs because of increases in market value, the appreciation remains nonmarital property. *See Nordberg,* 658 A.2d at 219.

[¶ 14] Clum had the burden to prove that the increases in the values of his nonmarital property that occurred subsequent to his marriage to Graves should be characterized as nonmarital property. *See* 19 M.R.S.A. § 722–A(2) & (3); *Macdonald,* 532 A.2d at 1047. Clum was given several opportunities to prove to the trial court what portions of the increases in the values of his nonmarital property were attributable to market fluctuations rather than reinvestment of income. During the second hearing, Clum testified that the increases in the values of the First Nationwide CD and the Fidelity Mutual Fund were attributable to a combination of reinvestment of dividend income and capital gains income, as well as market increases. He presented no evidence, however, to show what portions of the increases in the values were attributable to each of these sources. Accordingly, the trial court concluded that Clum had not met his burden of rebutting the presumption that the increases in the values of the nonmarital property should be characterized as marital property.

[¶ 15] This is the same conclusion that we upheld in *Harriman.* In *Harriman,* the husband had acquired several invest-ment accounts prior to his marriage, did not contribute any additional funds to the accounts during the marriage, and testified that the increases in the values of these accounts were attributable, at least in part, to reinvested interest income and reinvested dividend income. *See* 1998 ME 108, ¶¶ 2–3, 710 A.2d at 923–24. We stated,

> The record is clear that some part of the appreciation in value of [the husband's] accounts resulted from reinvestment of dividend income. Because that income was marital property, the appreciation of that portion retains its status as marital property. Moreover, [the husband] had the burden of proving how much of the increase in the value of the accounts remained nonmarital, *Macdonald v. Macdonald,* 532 A.2d at 1050, and the court found he had not met that burden. That finding is not clearly erroneous; therefore, the court correctly ruled that all of the appreciation was governed by the presumption of section 722–A that it was marital.

1998 ME 108, ¶ 8, 710 A.2d at 925; *see also Nilsen,* 1998 ME 109, ¶ 9, 709 A.2d at 1193 (*Clifford, J.,* concurring) (increase in value of nonmarital property during marriage constitutes marital property because husband failed to present evidence to attribute increase to increase in market value). The trial court here likewise did not clearly err in characterizing the increases in the values of the nonmarital property as marital property because Clum has not met his burden of proof.

[¶ 16] The divorce statutes create a presumption that any property acquired during marriage or any increase in the value of property acquired before mar-

9. The line of cases we overruled in *Long* first established the concept of marital effort. *See* 1997 ME 171, ¶¶ 12, 15–16, 697 A.2d at 1322, 1323–24 (overruling *Tibbetts,* 406 A.2d 70). In *Harriman,* we recognized that *Long* had overruled earlier cases that developed the concept of marital effort and stated, "Whether the court erred by characterizing [the spouse's] inaction as 'marital effort' and whether the concepts from ... *Tibbetts* retain their decisional vitality, we need not decide." *Harriman,* 1998 ME 108, ¶ 8, 710 A.2d at 924–25. Given the factual similarity between *Harriman* and this case with respect to the increases in the values of nonmarital investments, we likewise can resolve this case without determining whether the concept of marital effort has applicability when the property in question is not jointly owned.

riage that occurs during the course of the marriage is marital property. *See* 19 M.R.S.A. § 722–A(2) & (3). A party seeking to rebut the statutory presumption *must* present evidence describing the sources of the increases in value *and* the amount of the increases in value attributable to each source. Meeting this burden may require expert testimony. That the burden may be difficult to meet, however, is not a sufficient reason for altering the statutory presumption. That presumption, and the corresponding burden of proof to rebut the presumption, are consistent with the shared enterprise theory of marriage expressed in the statute, and are designed to ensure that property value attributed to the marriage enterprise is credited fairly to both parties participating in that enterprise.

## II. ATTORNEY FEES

[¶ 17] The determination of whether to award attorney.fees, as well as what constitutes reasonable attorney fees, lies within the discretion of the trial judge. *See* 19 M.R.S.A. § 722(3) (now 19–A M.R.S.A. § 952 (1998)); *Rosen v. Rosen*, 651 A.2d 335, 336 (Me.1994). We review a trial court's award of attorney fees solely for an abuse of discretion. *See Rosen*, 651 A.2d at 336. An award of attorney fees should "be based on the parties' relative capacity to absorb the costs of litigation[,]" *Smith v. Smith*, 419 A.2d 1035, 1040 (Me. 1980), and all relevant factors that serve to create an award that is "fair and just under the circumstances," *see Rosen*, 651 A.2d at 336.

[¶ 18] In awarding attorney fees to Graves, the District Court explained that Clum has a "substantially greater financial ability to pay." The evidence in the record supports this conclusion. Clum owns many liquid nonmarital assets, earns more income than Graves, owns real estate that has significant equity, and inherited an undisclosed sum from his father's estate. Graves owns a condominium with only $32,000 in equity and assets that are

related to retirement. Clum's contention that the District Court awarded the fees to ·punish Clum for requesting relief from the original divorce judgment is not supported by the record.

The entry is:

Judgment affirmed.

